## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## at CHATTANOOGA

| | |
|---|---|
| IN RE: SKELAXIN (METAXALONE) ANTITRUST LITIGATION | Lead Case No. 2:12-cv-83<br><br>MDL No. 2343<br><br>Judge Curtis L. Collier |
| THIS DOCUMENT RELATES TO:<br><br>DIRECT PURCHASER CLASS  ACTIONS | |

## DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS HELD BY THEIR ASSIGNOR

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................... 1

II.   ARGUMENT....................................................................................................................... 2

    A.    The information sought by Defendants' Motion is beyond the scope of Rule 34 and is not within the possession, custody, or control of DPCPs................................................................... 2

    B.    Defendants have received full discovery from each direct purchaser class representative, including documents that originated with assignors. .................................................................. 5

    C.    DPCPs have not obtained information from their assignors, nor do they have the ability to do so. ........................................................................................................................................ 6

    D.    Defendants have not attempted to seek the information from the assignors, nor have they been unfairly thwarted from doing so by DPCPs...................................................................... 7

III.  CONCLUSION.................................................................................................................... 9

Case 1:12-md-02343-CLC-WBC   Document 390   Filed 09/30/13   Page 2 of 15   PageID #: 14750

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alexander v. F.B.I.*, 194 F.R.D. 299 (D.D.C. 2000) .........................................................3

*Bank of New York v. Meridian BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997) ................................................................................................................................4

*Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993) ...............................3

*Cocheran Consulting Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224 (Fed. Cir. 1996)...........3

*Gerling Int'l Ins. Co. v. Comm'r.*, 839 F.2d 131 (3d Cir. 1988) ....................................3

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995) .................................................2, 3

*In re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999) ...........................................3

*In re Relafen Antitrust Litig.,* 346 F. Supp. 2d 349 (D. Mass. 2004).............................7

*JP Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005) ...........................4

*McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70 (D.D.C. 1999) .................3

*Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d. 142 (3d Cir. 2004)...........................3

*Robert Bosch LLC v. Snap-On Inc.*, 12-11503, 2013 WL 823330 (E.D. Mich. Mar. 6, 2013) ................................................................................................................................2

*Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984).......................................................3

*Sithon Mar. Co. v. Mansion*, 1998 WL 182785 (D. Kan. 1998) ......................................5

*United States Int'l Trade Comm' v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005) ...........2

*United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450 (9th Cir. 1989) ........................................................................................................................3

**OTHER: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Fed. R. Civ. P. 34 .......................................................................................................1, 2, 3

Fed. R. Civ. P. 45 .......................................................................................................1, 7, 8

**OTHER AUTHORITIES**

8B Charles A. Wright & Author R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2210
    at 149 (3d ed. 2010) ............................................................................................................2, 3

Case 1:12-md-02343-CLC-WBC   Document 390   Filed 09/30/13   Page 4 of 15   PageID #:
14752

# I.     INTRODUCTION

Defendants seek to compel documents not in the possession, custody, or control of the Direct Purchaser Plaintiffs as contemplated by Rule 34 and the Sixth Circuit.[1]  For this reason alone, Defendants' Joint Motion to Compel Plaintiffs to Produce Documents Held by Their Assignors ("Defendants' Motion")[2] should be denied.  But in attempting to compel Direct Purchaser Class Plaintiffs ("DPCPs") to produce "responsive documents and data held by their assignors," Defendants also distort the relevant facts and procedural posture of this litigation and such distortions must be corrected.

Defendants seek to create the false and misleading impression that some of the DPCPs are using their status as assignees as both a "shield and a sword" and putting Defendants in an allegedly untenable position – purportedly unable to obtain  discovery from any party while DPCPs can seek documents from their assignors in support of their claims.  In fact, Defendants have received full discovery from each DPCP, including all responsive documents and/or data DPCPs possess from their assignors as well as information from their own files that relate to categories identified in Defendants' Motion.  DPCPs have not sought (nor do they have the ability to seek) information at will from their assignors.  With the exception of one category of materials already deemed irrelevant by Judge Magistrate Carter, the information Defendants seek to compel has not been sought previously via Rule 45 subpoena to assignors.  Defendants wish to create the false impression that they have been unfairly thwarted in attempts to seek such discovery from assignors in order to either claim DPCPs' assignments (and therefore their

---

[1] Defendants direct their motion to three of the direct purchaser class plaintiffs: the Meijer entities (proceeding by assignment by F.W. Kerr Co.), Ahold USA Inc. (proceeding by assignment from Cardinal Health, Inc.), and the Stephen J. LaFrance entities (proceeding by assignment from McKesson Corp.).  Kerr, Cardinal Health, and McKesson also are absent class members as they have not assigned all their purchases.  Defendants also target the individual direct purchaser plaintiffs: Walgreen and Rite Aid, which are filing a separate response.

[2] Doc. No. 373.

1

claims) are invalid or to claim that the assignors themselves are the real parties of interest.[3] The Court should deny Defendants' Motion.

## II.    ARGUMENT

### A.  The information sought by Defendants' Motion is beyond the scope of Rule 34 and is not within the possession, custody, or control of DPCPs.

The information sought by Defendants is not within the legal reach of DPCPs nor do they have the practical ability to obtain such information from assignors.  Under Rule 34(a), a party served with a request for production of documents is required to produce those documents "which are in the possession, custody or control of the party upon whom the request is served." Defendants bear the burden of proving that DPCPs have control over the requested information.[4] Defendants fail to meet that burden.

In the Sixth Circuit, as in most others, documents are deemed to be in the "possession, custody or control" as defined by Rule 34 if the party has actual possession or control of the documents "or has the legal right to obtain the documents on demand."[5] Defendants do not contend that DPCPs have actual possession or custody of the requested information held by their assignors (if the requested information even exists).  Defendants do not even claim that DPCPs

---

[3] If Defendants were to seek to serve new subpoenas on the assignors (absent class members here), the subpoena recipients would retain all rights to object and/or move to quash or for a protective order.  Defendants would also have to comply with Magistrate Judge Carter's prior ruling on the issue of discovery of absent class members.  *See* Order on Direct Purchaser Plaintiffs' Motion for Protective Order dated June 10, 2013 (Doc. No. 230) ("June Order") at 8 ("in a class action, even a putative class action, the party seeking discovery from an unnamed class member must first show a particularized need for said discovery and first seek permission from the court."). Defendants have appealed that ruling to the District Court. The point here is that Defendants have not sought permission to serve such subpoenas, yet try to create the (false) impression that they have been unfairly stymied.

[4] *United States Int'l Trade Comm' v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005).

[5] *In re Bankers Trust Co.*, 61 F3d 465, 469 (6th Cir. 1995);  *Robert Bosch LLC v. Snap-On Inc.*, 12-11503, 2013 WL 823330 (E.D. Mich. Mar. 6, 2013); 8B Charles A. Wright & Author R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2210 at 149 (3d ed. 2010).

have control over such information in the hands of their assignors and acknowledge that the assignments at issue do not provide for the legal right to obtain the requested information.[6]

Arguing the DPCPs should have control over the requested information, Defendants urge the Court to adopt an expansive definition of "control" under Rule 34 which would include "the practical ability to obtain the documents from the non-party . . ."[7] This is not the legal standard.[8] The overwhelming weight of authority from Circuit Courts of Appeals that have addressed the issue, including the Third, Seventh, Ninth, Eleventh, and Federal Circuits, agree with the Sixth Circuit: the "legal right to obtain documents" standard is proper in determining whether a party could be compelled to produce documents.[9]

Even if "the practical ability to obtain" were the standard (and it is not), Defendants have made no showing that DPCPs have the practical ability to obtain the categories of information Defendants seek from assignors. The information sought by Defendants in no way relates to the assignments or the DPCPs' purchases from their assignors. Nothing Defendants seek relates specifically to information assignors might have about the DPCPs' purchases of Skelaxin. Instead Defendants seek information concerning four general and broad categories of information: 1) information that may relate to market definition, 2) documents about potential

---

[6] Memorandum of Law in Support of Defendants' Motion (Doc. No. 373) ("Defendants' Memo") at 8.

[7] *Id.* at 7 (quoting *Bank of New York v. Meridian BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997); Defendants' Memo at 8.

[8] *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) ([W]e conclude – consistently with all of our sister circuits who have addressed the issue – that the legal control test is the proper standard . . . Ordering a party to produce documents that it does not have the legal right to obtain will often times be futile, precisely because the party has no certain way of getting those documents.").

[9] *See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004); *In re Citric Acid Antitrust Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993); *Gerling Int'l Ins. Co. v. Comm'r.*, 839 F.2d 131, 140-41 (3d Cir. 1988); *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Cocheran Consulting Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996); *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). *See also Alexander v. F.B.I.*, 194 F.R.D. 299, 301 (D.D.C. 2000); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 77 (D.D.C. 1999).

generic entry; 3) information related to generic bypass; and (4) documents related to the Skelaxin patent litigations (if any).[10]  None of this information is in any way specific to DPCPs' assignments and nothing in the assignment or in the business relationship between DPCPs and their assignor would allow DPCPs to obtain such information, even on an informal basis.  And one category (relating to bypass) has already been ruled as irrelevant by Magistrate Judge Carter.[11]

Defendants' reliance on *Winnick*[12] and *Bank of New York*[13] is misplaced.  In both of those cases, the assignee was completely removed from the asserted claims and had no information relevant to those claims without receipt from their assignors.  In *Winnick*, for example, the assignee was asserting claims for fraudulent misrepresentation to the assignor banks but had no information about the bank's reliance on those misrepresentations.  Here, DPCPs are in the chain of distribution for Skelaxin.  They possess and have produced documents relevant to their claims, including concerning the subject matters at issue in Defendants' Motion.

In *Bank of New York*, the Magistrate Judge noted that the assignor, a Tanzanian bank, actually had commenced the case itself and that the assignment was made more than a year after the case was filed.[14]  Thus the assignor had invoked the discovery power of the court affirmatively prior to assigning its claim during the pendency of the litigation.  Here the assignors are merely absent class members and have never sought to litigate any claim.

---

[10] Defendants' Memo at  9.  DPCPs also object to Defendants' document requests on a number of bases, including overbreadth and relevance.  DPCPs do not hereby waive any such objecti-ents.

[11] *See* June Order.

[12] *JP Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005).

[13] *Bank of New York*, 171 F.R.D. 135.

[14] *Id*. at 147.

Defendants have not borne their burden of demonstrating that the DPCPs have control over the documents in possession of their assignors and Defendants' Motion should be denied.[15]

**B.  Defendants have received full discovery from each direct purchaser class representative, including documents that originated with assignors.**

Each DPCP has produced documents in their possession responsive to Defendants' documents requests, including documents and data responsive to the requests at issue in Defendants' Motion.  Defendants' suggestion that DPCPs are somehow using the assignment to evade their discovery obligations is simply false.

DPCPs have produced documents in their possession that originated with their assignors.  These documents include the assignments themselves, contracts with their assignors which govern the purchase of pharmaceuticals from the wholesaler, price change announcements, communications related to Skelaxin and metaxalone sales and supply issues, and product literature.[16]  These documents also include information DPCPs possess on the subjects Defendants seek to compel here – whether they originated with their assignors or were created in the ordinary course of their own business.  For example, concerning the issues of generic entry and the Skelaxin patent litigations, DPCPs produced third party reports regarding the Skelaxin patent litigations and  generic entry.[17]  Other DPCPs produced communications with sales representatives from generic manufacturers of metaxalone concerning anticipated launch of the generic and the impact of the patent litigations.[18]  Each DPCP also provided Defendants with one

---

[15] *See Sithon Mar. Co. v. Mansion*, 1998 WL 182785 at *6 (D. Kan. Apr. 10, 1998) (denying motion to compel as the moving party had offered "nothing of substance" to show the requisite control over documents held by a separate legal entity.")

[16] DPCPs provided Defendants with responsive documents between late May and mid-June.  The discovery is considered confidential or for attorneys' eyes only under the terms of the protective order in this litigation but DPCPs shall provide a copy for the Court's in camera review should such a review be helpful.

[17] *See supra.*

[18] *Id.*

or more deponents who were questioned on the issues which are the subject of Defendants' Motion.[19]

Defendants claim that Plaintiffs "refuse to produce any documents from their assignors"[20] and also claim that Plaintiffs have resisted producing their own documents as well "because they are suing in the shoes of their assignors."[21]  Defendants' arguments have no merit.

**C.  DPCPs have not obtained information from their assignors, nor do they have the ability to do so.**

DPCPs have neither sought nor received documents or data from their assignors in support of their claims.  Defendants assert that any claim that the assignors' documents are beyond DPCPs' reach is belied by "Plaintiffs' apparent ability to obtain helpful material from their assignors"[22] insinuating that DPCPs have the ability to obtain from their assignors whatever information they wish to support their claim.  In fact, no DPCP has obtained information from the assignor in support of their claims.

The only information obtained by any of the plaintiffs subject to Defendants' Motion is purchase data related to Skelaxin obtained by individual direct purchaser plaintiff Rite Aid, which is filing a separate response.  Rite Aid obtained its own purchase data from its assignor/wholesaler precisely because the wholesaler is in the business of tracking sales for their customers and regularly provides that information upon request – and Rite Aid produced that data to Defendants in discovery.  But that data is unrelated to the types of information Defendants seek in this motion and Rite Aid's ability to obtain that data does not imply Rite Aid

---

[19] Defendants conducted these depositions between mid-June and early July, after receiving responsive documents from each of the DPCPs at issue here.

[20] Defendants' Memo. at 2.

[21] *Id*. at 2-3.

[22] *Id*. at 8.

has the legal right to obtain the categories of information Defendants do seek, let alone imply that all direct purchasers, including DPCPs, have that ability.

### D. Defendants have not attempted to seek the information from the assignors, nor have they been unfairly thwarted from doing so by DPCPs.

Defendants seek to create the false impression that they have sought the information called for by their motion from assignors through Rule 45 subpoenas issued earlier this year and that "Plaintiffs moved to quash them on the ground their assignors were immune from discovery as 'absent class members.'"[23]  In fact, with the exception of one subject matter,[24] there is no overlap between the information sought in Defendants' prior Rule 45 subpoenas to absent class members in April 2013 and the information called for by Defendants' Motion.

Between April 22 and April 25, 2013, without seeking leave of Court, Defendants issued twenty-five subpoenas on absent members of the proposed direct purchaser class and others in twenty-one separate jurisdictions.[25]  Each subpoena contained eleven document requests (many with multiple subparts) and sought approximately ten years' worth of documents, data, and other information concerning, inter alia: (1) the resale of Skelaxin after the subpoena recipient purchased it from Defendant King, including the absent class members' prices to their customers and "data  reflecting [] profits and losses on a monthly basis from" selling Skelaxin; (2) purchases of Skelaxin from Defendant King (information King itself already has); (3) numerous contracts with each subpoena recipient's customers; (4) absent class members' "practice or

---

[23] *Id.*

[24] Defendants seek information on the issue of generic bypass, or the phenomenon that some purchasers of a brand drug sometimes buy the generic directly once it becomes available.  The court in *In re Relafen Antitrust Litig.,* 346 F. Supp. 2d 349, 369-70 (D. Mass. 2004) held that defendants should not be permitted to reduce their damages' liability via bypass effects.  On the issue of bypass, Magistrate Judge Carter ruled that such information was legally irrelevant to the direct purchaser claims and issued a protective order with respect to information related to bypass and all other "downstream" discovery relating to class members' own prices, sales and profits from the resale of prescription drugs, including Skelaxin.  June Order at pp. 13-18.

[25] *See* Declaration of David F. Sorensen in support of Direct Purchaser Plaintiffs' Motion for Protective Order (Doc No. 179) and exhibits thereto.

experience with generic bypass, including documents relating to the generic bypass of Skelaxin, generic metaxalone, other muscle relaxants, or drugs subject to similar levels of generic bypass;" (5) a list of all pharmaceutical antitrust litigation, and all documents filed "by or on behalf of" the absent class member in support of class certification in such cases (documents that are publically available); (6) all communications with class counsel in any pharmaceutical antitrust litigation (documents that are both irrelevant and likely privileged); and (7) "[a]ll documents relating to any analysis of the profitability of distributing or reimbursing for brand-name pharmaceutical products as compared to generic versions of the same drugs"[26]

On May 8, 2013, counsel for the proposed class moved for a protective order.[27] DPCPs objected to the subpoenas primarily on the basis that the subpoenas sought "downstream" discovery – discovery about sales and profits of the subpoena recipients – which is legally irrelevant in a direct purchaser action. By Order dated June 10, 2013, Magistrate Judge Carter granted much of the motion,[28] agreeing that much of the discovery sought by the subpoenas, (including the one area of overlap with Defendants' Motion here – information concerning the issue of bypass) was irrelevant to the direct purchaser claims.[29] That Order is the subject of an objection by Defendants and is currently being briefed for consideration by the Court.[30]

Here Defendants seek new categories of documents from assignors – categories not previously sought by subpoena – including information related to market definition, generic

---

[26] *See id.* at Ex. B2 (subpoena served on AmerisourceBergen) and Exs. B1 through B28 (copies of all subpoenas).

[27] The individual subpoena recipients retain all their rights to also object to the subpoenas, which were served out of multiple jurisdictions.

[28] Judge Carter deferred a decision on select portions of the DPCPs' Motion for Protective Order. On July 16, 2013, Direct Purchaser Class Plaintiffs and Defendants submitted a stipulation to resolve the remaining aspects of the motion unresolved by the June Order (Doc. No. 267). The Court finally resolved the motion by Order dated August 22, 2013 (Doc. No. 343).

[29] "In light of *Hanover Shoe* and *Illinios Brick*, the undersigned concludes that down-stream discovery is not in any way relevant to the DPCP's measure of damages, should they prevail in this action." Order at 12.

[30] *See* Doc. Nos. 368 and 380.

entry, and the various Skelaxin patent litigations. Defendants have not been unfairly thwarted in their attempts to obtain this information from assignors; they have never sought to issue a subpoena seeking this information.[31]

## III. CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Compel Plaintiffs to Produce Documents Held by their Assignors should be denied in its entirety.


Dated: September 30, 2013

Respectfully submitted,

_/s/ **Thomas M. Sobol**_____
Thomas M. Sobol
David S. Nalven
Lauren G. Barnes
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700

*Lead Counsel for Direct Purchaser Class Plaintiffs*

Peter Kohn
Joseph T. Lukens
A. Luke Smith
Sarah Westby
Faruqi & Faruqi, LLP
101 Greenwood Avenue
Jenkintown, PA 19046
Tel: (215) 277-5770

David F. Sorensen
Eric L. Cramer
Andrew Curley
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000

Barry Taus
Kevin Landau
Taus, Cebulash & Landau PC
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (646) 873-7654

Dianne M. Nast
Erin C. Burns
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300

Michael L. Roberts
Debra Gaw Josephson
Stephanie Egner
Roberts Law Firm, P.A.

Linda P. Nussbaum
Jay W. Eisenhofer
Grant & Eisenhofer, P.A.
485 Lexington Avenue

---

[31] *See* note 3 (citing June Order at p. 8).

20 Rahling Circle
Little Rock, AR 72223
Tel: (501) 821-5575

Joseph M. Vanek
David P. Germaine
Vanek, Vickers & Masini, P.C.
55 West Monroe Street, Suite 3500
Chicago, IL 60603
Tel: (312) 224-1500

Paul E. Slater
Sperling & Slater
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200

Gary Brewer
Brewer & Terry PC
1702 West Andrew Johnson Hwy.
P.O. Box 2046
Morristown, TN 37816
Tel: (423) 587-2730

New York, NY 10017
Tel: (646) 722-8504

Roberta D. Liebenberg
Paul Costa
Louis C. Ricciardi
Fine, Kaplan, and Black, RPC
1835 Market Street, 28th Floor
Philadelphia, PA 19103
Tel: (215) 567-6565

Charles F. Barrett, Esq.
6518 Highway 100, Suite 210
Nashville, TN 37205
Tel: (615) 515-3393

John Radice
Radice Law Firm
34 Sunset Blvd
Long Beach, NJ 08008
Tel: (646) 386-7688

*Counsel for the Direct Purchaser Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2013, a copy of the Direct Purchaser Plaintiffs'

Memorandum in Opposition to Defendants' Joint Motion to Compel Plaintiffs to Produce

Documents Held by Their Assignor was served electronically on counsel for the defendants via

the Court's CM/ECF system.

_/s/ Thomas M. Sobol_____
Thomas M. Sobol