**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| IN RE: SKELAXIN (METAXALONE) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>**End Payor Action**<br>**Indirect Purchaser for Resale Action**<br>**Individual End-Payor Actions** | MDL Case No. 1:12-md-2343<br><br>Judge Curtis L. Collier |
|---|---|

# MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION CHALLENGING THE PRIVILEGED STATUS OF INADVERTENTLY DISCLOSED PRIVILEGED DOCUMENTS

Defendant King Pharmaceuticals LLC, f/k/a King Pharmaceuticals, Inc., ("King") submits this memorandum in support of its opposition to Plaintiffs' Motion Challenging the Privileged Status of Inadvertently Disclosed Material.

Plaintiffs assert no challenge to the process by which King clawed back the six documents at issue but, instead, argue that the documents themselves are not privileged. Plaintiffs' arguments, though, must fail. Three of the documents reflect settlement negotiations which, under controlling Sixth Circuit law, are protected by the "settlement privilege." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). The remaining three documents are email communications between the then-current General Counsels of King, John Bellamy and James Elrod, and King employees that are requesting and/or providing legal advice and are thus protected by the attorney-client privilege.

## ARGUMENT

Plaintiffs do not challenge the process by which King clawed back the six documents at issue pursuant to the Stipulated Protective Order nor do they make any other claim of waiver. Rather, Plaintiffs' motion only seeks to (1) have this Court disregard the binding Sixth Circuit precedent in *Goodyear* in order to avoid the applicable "settlement privilege" that protects three documents reflecting King's negotiations "made in furtherance of a settlement" of prior litigations and (2) challenge King's claim of attorney-client privilege on three communications involving King's General Counsels and employees. Both of Plaintiffs' arguments fail.

### I. UNDER BINDING SIXTH CIRCUIT PRECEDENT, COMMUNICATIONS MADE IN FURTHERANCE OF SETTLEMENT ARE PROTECTED UNDER THE SETTLEMENT PRIVILEGE

#### A. The Challenged Documents

##### 1. KING_SKELAXIN_MDL_0218816-17: April 07, 2010 emails to and from Chris Klein, King's in-house counsel

[redacted]

[1] [redacted]

[redacted]

**2. KING_SKELAXIN_MDL_01486195: May 28, 2010 email from Claudia Zumbro, King's outside counsel, to CorePharma's outside counsel**

[redacted]

[2] Pursuant to Paragraph 12 of the March 27, 2013 Stipulated Protective Order [Doc. 130], King has submitted a copy of the inadvertently disclosed privileged materials to the Court for *in camera* review.

[3] [redacted]

[redacted]

3. **KING_SKELAXIN_MDL_01486198: May 28, 2010 <u>draft settlement letter agreement to CorePharma</u>**

[redacted]

**B. <u>*Goodyear* Is the Law in this Jurisdiction</u>**

As this Court has recognized, "[i]n *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), the Sixth Circuit created a federal privilege protecting statements made in furtherance of a settlement from third party disclosure." *Grant, Konvalinka & Harrison v. United States,* 1:07-CV-88, 2008 WL 4865571, at *9 (E.D. Tenn. June 27, 2008) (Carter, J.) (quoting *Goodyear*, recognizing settlement privilege in both federal question and diversity cases) *affirmed* 2008 WL 4865566 (E.D. Tenn. Nov. 10, 2008) (Collier, J.); *see also Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 805 (6th Cir. 2007) (In *Goodyear*, we held that the "strong public interest" in encouraging settlement negotiations justified an

---

4 [redacted]

expanded privilege protecting them from discovery."). This Court further held that the privilege recognized in *Goodyear* is the law in this jurisdiction "until an en banc panel of the Sixth Circuit or the Supreme Court overturns the *Goodyear* decision," *Grant, Konvalinka & Harrison*, 2008 WL 4865571 at *9, neither of which has occurred.

[REDACTED]

1. **The *Goodyear* "settlement privilege" also applies in diversity cases**

Plaintiffs cannot avoid application of *Goodyear* to this case. Plaintiffs' argument that *Goodyear* only applies in federal question cases, not diversity cases, is belied by the case law. To begin with, *Goodyear* itself was based on diversity jurisdiction. *See Goodyear*, 332 F.3d at 978. Moreover, courts within the Sixth Circuit, including this Court, have repeatedly recognized that the settlement privilege is applicable to all actions in federal courts within the Sixth Circuit, irrespective of whether jurisdiction is based on diversity or federal question. *See, e.g.*, *Gardiner v. Kelowna Flightcraft, Ltd.*, 2:10-CV-947, 2011 WL 1990564, at n. 1 (S.D. Ohio May 23, 2011) (recognizing settlement privilege in diversity action); *Grant, Konvalinka & Harrison,* 2008 WL 4865571, at *9 n. 5 (same); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 5:03-CV-00240-R, 2007 WL 1959168, at *3 fn. 1 (W.D. Ky. June 29, 2007) (same); *Grupo*

*Condumex, S.A. de C.V. v. SPX Corp.*, 331 F.Supp.2d 623, 629 and n. 3 (N.D.Ohio 2004) (same).[5]

In *Goodyear*, the parties entered into settlement discussions prior to trial. *Id.* at 978. A third party sought to discover the content of the settlement discussions because they were alleged to be relevant to a different federal action. *Id.* at 979. The only issue on appeal was whether communications made in furtherance of settlement negotiations are discoverable by litigants in another action. *Id.* at 979. As a matter of first impression, the Sixth Circuit carefully analyzed the interplay of Federal Rules of Evidence 408, 501, and Federal Rule of Civil Procedure 26(b)(1) and held that "any communications made in furtherance of settlement are privileged." *Goodyear*, 332 F.3d at 983. The court noted that, "Rule 501 of the Federal Rules of Evidence authorized the federal courts to determine new privileges . . . ." *Id.* at 979.

Just like *Goodyear,* in the instant case, Plaintiffs are seeking the content of settlement discussions conducted by King during the pendency of other litigations. Plaintiffs have offered no compelling reason for this Court to depart from binding precedent.

Even if the Court were to ignore *Goodyear*, choice of law principles would still mandate recognition of a federal settlement privilege. That is because federal privilege law must be applied in actions involving both federal question claims and pendant state law claims. *See Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992); *Grabow v. Cnty. of Macomb,* 12-10105, 2013 WL 3354505, at *5 (E.D. Mich. July 3, 2013) (holding that federal privilege law

---

[5] While, as Plaintiffs' note (Pls' Memo. at p.4 n.4), some of these Courts expressed misgivings about the propriety of a federal settlement privilege being recognized in a diversity action, they also acknowledged that *Goodyear* was a diversity action and accordingly that under binding Sixth Circuit precedent the settlement privilege applies to diversity actions. Plaintiffs' remaining citation to a decision from the Ohio Supreme Court interpreting Ohio state law has no precedential or persuasive value. *Id.*, *citing Ohio Consumers' Counsel v. Pub. Util. Comm.*, 856 N.E.2d 213, 235 (Ohio 2006).

applied to state law claims because action also included federal question claims). Indeed, in an antitrust case involving both federal and state antitrust claims, another court within the Sixth Circuit squarely held that "federal common law of privileges controls as to the entire case." *See Nilavar v. Mercy Health System-Western. Ohio*, 210 F.R.D. 597, 601 (S.D. Ohio 2002). This is especially true in multidistrict litigations where the entire purpose of consolidation into an MDL is to promote consistent and efficient pretrial proceedings. *See, e.g., In re Baycol Products Litig.*, MDL-1431, 2003 WL 22023449, at *2 (D. Minn. 2003) ("MDL are best served by applying a consistent law of privilege to discovery in the pretrial proceedings").

Here, federal privilege law, which clearly recognizes the settlement privilege, applies uniformly to all plaintiffs because there are substantial federal claims and defenses alongside the various state law claims. Indeed, not only are some actions based exclusively on federal causes of action, but every plaintiff's claim depends on its ability to establish an exception to Defendants' immunity under the *Noerr-Pennington* doctrine, a U.S. Supreme Court doctrine grounded in the First Amendment to the U.S. Constitution.

**2. The instant cases, contrary to Plaintiffs' contentions are, indeed, based on federal question subject matter jurisdiction**

Curiously, while Plaintiffs alleged that Defendants violated **federal law**, they now argue that the settlement privilege recognized by *Goodyear* is inapplicable to the present case because this action is a diversity case, not one based on a federal question. Pls.' Memo. at p.4. This argument is without merit. The DPPs, EPPs, Rite-Aid Plaintiffs and Walgreen Plaintiffs all pled federal question subject matter jurisdiction based on violations of federal antitrust law.

- The EPPs' Complaint pled federal question subject matter jurisdiction pursuant to "15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337 in that Plaintiffs bring claims under Section 16 of the Clayton Act, 15 U.S.C. § 26" and "Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2." EPP Compl. ¶ 6, [Doc. 67]. Furthermore, the EPP's complaint alleged that the "Court has supplemental

jurisdiction over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367." *Id.*

- The DPPs' Complaint alleged federal question subject matter jurisdiction under "28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15." DPP Compl. ¶ 11, [Doc. 65]. Furthermore, the DPPs alleged that the "action arises under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and § 4 of the Clayton Act, 15 U.S.C. § 15(a)." *Id.*

- The Rite-Aid Plaintiffs' Complaint pled federal question subject matter jurisdiction pursuant to "28 U.S.C. §§ 1331 and 1337(a)." Rite-Aid Compl. ¶ 10. The complaint also alleged that the "action arises under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and section 4 of the Clayton Act, 15 U.S.C. § 15(a)." *Id.*

- The Walgreen Plaintiffs' complaint pled federal question subject matter jurisdiction pursuant to "28 U.S.C. §§ 1331 and 1337(a)." Walgreen Compl. ¶ 10, [Doc. 66]. The complaint also alleged that the "action arises under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and section 4 of the Clayton Act, 15 U.S.C. § 15(a)." *Id.*

*By Plaintiffs' own admissions,* these actions were premised on federal question subject matter jurisdiction, not diversity. As such, any argument that this Court does not have federal question subject jurisdiction over at least part of this MDL, or that *Goodyear* does not apply, is simply wrong.

### C. The Inadvertently Produced Documents Are *Not* Likely to Lead to the Discovery of Admissible Evidence

Plaintiffs next suggest, again in conclusory fashion, that the Court should disregard *Goodyear* and make the settlement-related documents discoverable because they are likely to lead to admissible evidence. But, the Sixth Circuit explicitly stated that "one of the proposed rationales for the enactment of Fed. R. Evid. 408 was that statements made in furtherance of settlement are *never* relevant." *Goodyear*, 332 F.3d at 983 (emphasis in original). Each of the three challenged documents involves prior lawsuits that Plaintiffs have been aware of since their initial complaints were filed well over a year ago. Indeed, all of these prior lawsuits

were part of Plaintiffs' own definition of the "Underlying actions" in their various document requests.[6] King has already completed its agreed upon document production having produced more than 182,000 documents containing over 3,686,000 pages in this litigation. *See* December 31, 2013 Letter from Andrew K. Solow, Ex. 3 to the Solow Decl. These productions represent the universe of documents that Plaintiffs already agreed would constitute King's entire document production, save for "extenuating circumstances." *See* Stipulation By and Among The Parties Regarding Resolution of Pls.' Emergency Mot. to Compel Defendants to Expedite Production of Documents, dated August 14, 2013, at Para. 5 [Doc. 340] (incorporating by reference Letter from Andrew Solow to Edward Notargiacomo dated July 24, 2013). Therefore, because any relevant and admissible evidence relating to these matters has already been produced, these documents cannot lead to the discovery of *additional* admissible evidence.

*Grant, Konvalinka & Harrison, P.C. v. United States*, cited by Plaintiffs, actually further supports King's position. In affirming this Court's ruling, Judge Collier reiterated that the burden of showing relevance lies with the party seeking discovery. *See Grant*, 1:07-CV-88, 2008 WL 4865566, at *4 (E.D. Tenn. Nov. 10, 2008) (Collier, J.). Judge Collier then noted that "Plaintiff contends the information requested 'may lead' to the discovery of admissible evidence, but Plaintiff provides no explanation or basis for that bald assertion." *Id.*

---

[6] In both Plaintiffs' First Request for Production of Documents, and End Payor Plaintiffs' Second Request for Production of Documents, Plaintiffs define "Underlying actions" to mean *King Pharms., Inc. et al. v. Mutual Pharm. Co.,* Civil Action No. 05-mc-0018 (E.D.N.Y.), *King Pharms., Inc. et al. v. Mutual Pharm. Co.,* Civil Action No. 04-cv-1083 (E.D. Pa.), *King Pharms., Inc. et al. v. Mutual Pharm. Co.,* Civil Action No. 05-mc-80263 (N.D. Cal.), *Elan Pharms., Inc. v. Eon Labs., Inc.,* Civil Action No. 03-cv-0006 (E.D.N.Y.), *King Pharms., Inc. et al. v. Eon Labs, Inc.,* Civil Action No. 04-cv-5540 (E.D.N.Y.), *King Pharms., Inc. et al. v. Sandoz, Inc.,* Civil Action No. 08-cv-5974 (D.N.J.), *Elan Pharms., Inc. v. CorePharma, LLC,* Civil Action No. 03-cv-2996 (E.D.N.Y.), *King Pharms., Inc. et al. v. CorePharma, LLC,* Civil Action No. 10-cv-1878 (D.N.J.). Plaintiffs' First Request for Production of Documents, Ex.1 to the Solow Decl.; End Payor Plaintiffs' Second Request for Production of Documents Plaintiffs, Ex. 2 to the Solow Decl.

The same is true here. Even setting aside *Goodyear's* recognition that statements made in furtherance of settlement are *never* relevant, Plaintiffs have not satisfied their burden of showing that the particular information in these documents is reasonably calculated to lead to the discovery of admissible evidence.

### D. Policy Considerations Encourage <u>Application of the Settlement Privilege</u>

The *Goodyear* court articulated compelling policy considerations supporting its decision to prevent discovery of communications made in furtherance of settlement.

**First**, the Sixth Circuit explained that there is a "*strong* public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear*, 332 F.3d at 980. Specifically, as Plaintiffs acknowledge in their brief, the court stated that

> [t]his is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of 'impeachment evidence,' by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative *quid pro quos,* and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*Id.*

**Second**, the Sixth Circuit reasoned that "confidential settlement communications are a tradition in this country." *Id.* The Court explained that even in situations where disclosure of settlement talks conflicted with the First Amendment's right of access to proceedings, the "need for privacy in settlement talks" outweighed any First Amendment considerations. *Id.*

**Third**, the Sixth Circuit agreed that there is an "inherent questionability of the truthfulness" of statements made during settlement negotiations. *Id.* at 981. This is because settlement negotiations are "typically punctuated with numerous instances of puffing and posturing since they are motivated by a desire for peace rather than from a concession of the merits of the claim." *Id.* (citing *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982)); *see also Eid v. Saint-Gobain Abrasives, Inc.*, 337 F. App'x 438, 444 (6th Cir. 2010) ("disputes are often settled for reasons having nothing to do with the merits of a claim."). Similarly, settlement negotiations are irrelevant given that they "may be motivated by a desire for peace rather than from any concession of weakness of position." *Goodyear*, 332 F.3d at 983. Therefore, the discovery of the facts from settlement negotiations would be "misleading if allowed to be used for purposes other than settlement." *Id.* at 981.

Plaintiffs claim that "these considerations lose significance when it is the process of settlement itself that may be part and parcel of Defendants' anticompetitive conduct." Pls.' Memo. at p.6. Plaintiffs cite no authority for their statement. In any event, the rationales behind the settlement privilege belie Plaintiffs' contention. The reasoning of *Goodyear* and its progeny is grounded in the importance of a party's ability to properly negotiate and enter into settlements, *not* the subject matter of the litigation in which information about settlement negotiations are being sought. *See Goodyear*, 332 F.3d at 980 ("[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination"); *see also Stockman*, 480 F. 3d at 798-99 (6th Cir. 2007) ("[i]t would be unreasonable to expect a party to ever make a settlement offer if doing so forced it into choosing between conceding one or more elements of liability or damages or having the offer admitted against it.").

Plaintiffs improperly point to *FTC v. Actavis*, 133 S. Ct. 2223 (2013) and argue that it demonstrated "the Supreme Court's intent to not hinder prosecution of antitrust claims arising out of settlement of patent litigations." Pls' Memo. at p.6. However, *Actavis* did not mention the settlement privilege or the policy considerations that the Sixth Circuit so carefully laid out. Indeed, that case had nothing to do with whether or not settlement negotiations and settlement-related communications should be protected. In any event, even if one were to adopt Plaintiffs' view of *Actavis*, that view goes toward the merits of the ***final*** settlement agreements, not privileged communications made "in furtherance of settlement."

## II. THE THREE INADVERTENTLY PRODUCED ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS

### A. The Challenged Documents

#### 1. KING_SKELAXIN_MDL_00134972-73: July 17, 2003 emails to and from John Bellamy, King's General Counsel

2. **KING_SKELAXIN_MDL_00134978-79: July 15, 2003 <u>email to John Bellamy, King's General Counsel</u>**

7



3. **KING_SKELAXIN_MDL_01486221: February 8, 2005 email from James Elrod, King's General Counsel**

B. **The Communications with King's General Counsels Are Protected by the Attorney-Client Privilege**

Without citing any case law and relying only on bald, conclusory arguments, Plaintiffs claim that the three Inadvertently Disclosed Privileged Documents - KING_SKELAXIN_MDL_01486221, KING_SKELAXIN _MDL_00134972-73, and KING_SKELAXIN_MDL_00134972-73 – do not fall under the attorney-client privilege.

[redacted]

In the Sixth Circuit, the elements of the attorney-client privilege are as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998); *World Healthcare Sys., Inc. v. SSI Surgical Servs., Inc.*, 1:10-CV-00060, 2011 WL 3489669, at *3 (E.D. Tenn. Aug. 9, 2011) (Collier, J.) (stating that "attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client").

[redacted]



## CONCLUSION

In light of the above, we respectfully request that the Court deny Plaintiffs' motion challenging the privileged status of the six documents.

Dated: January 8, 2014

                                                 Respectfully submitted,

/s/ Saul P. Morgenstern
SAUL P. MORGENSTERN
ANDREW K. SOLOW
KARIN E. GARVEY
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-7210
Fax: (212) 836-6333

AUBREY B. HARWELL, JR.
GERALD D. NEENAN
JEFFREY HOWARD GIBSON
Neal & Harwell, PLC
150 4th Avenue North
Suite 2000
Nashville, TN 37219
Tel: (615) 244-1713
Fax: (615) 726-0573

*Attorneys for King Pharmaceuticals LLC, f/k/a King Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2014, a copy of the foregoing was served electronically on counsel of record for all parties through the Court's CM/ECF system.

/s/ Gerald D. Neenan
Gerald D. Neenan
Neal & Harwell, PLLC
One Nashville Place, Suite 2000
150 Fourth Avenue, North
Nashville, TN 37219
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
gneenan@nealharwell.com