# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| In Re: Skelaxin (Metaxalone) Antitrust Litigation<br><br>This Document Relates To:<br><br>ALL END-PAYOR ACTIONS | 1:12-md-2343<br><br>*Skelaxin Antitrust Litigation* |

**END PAYOR PLAINTIFFS'**
**SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, End Payor Plaintiffs Plumbers and Pipefitters Local 572 Health and Welfare Fund, United Food and Commercial Workers Union and Midwest Health Benefits Fund, Pirelli Armstrong Retiree Medical Benefits Trust, Allied Services Division Welfare Fund, Plumbers and Pipefitters Local 572 Health and Welfare Fund, Laborers Trust Fund for Northern California, and Louisiana Health Service Indemnity Company (collectively, "End Payor Plaintiffs" or "Plaintiffs), request that Defendants King Pharmaceuticals, Inc. ("King") and Mutual Pharmaceutical Company, Inc. ("Mutual"), produce the following documents for inspection and copying, within thirty (30) days after service of these requests, at the offices of Branstetter, Stranch & Jennings, PLLC, 227 Second Avenue North, Nashville, Tennessee 37201, or at such other location as the parties may mutually designate in writing.

**I.      DEFINITIONS**

1. "ANDA" means Abbreviated New Drug Application as defined in 21 U.S.C. § 355(j).

2. "Underlying actions" means:

   a. *King Pharms., Inc. et al. v. Mutual Pharm. Co.*, Civil Action No. 05-mc-0018 (E.D.N.Y.)

  b. *King Pharms., Inc. et al. v. Mutual Pharm. Co., Civil Action No. 04-cv-1083 (E.D. Pa.)*

  c. *King Pharms., Inc. et al. v. Mutual Pharm. Co., Civil Action No. 05-mc-80263 (N.D. Cal.)*

  d. *Elan Pharms., Inc. v. Eon Labs., Inc., Civil Action No. 03-cv-0006 (E.D.N.Y.)*

  e. *King Pharms., Inc. et al. v. Eon Labs, Inc., Civil Action No. 04-cv-5540 (E.D.N.Y.)*

  f. *King Pharms., Inc. et al. v. Sandoz, Inc., Civil Action No. 08-cv-5974 (D.N.J.)*

  g. *Elan Pharms., Inc. v. CorePharma, LLC, Civil Action No. 03-cv-2996 (E.D.N.Y.)*

  h. *King Pharms., Inc. et al. v. CorePharma, LLC, Civil Action No. 10-cv-1878 (D.N.J.)*

3. "Communication" means without limitation, oral or written communications of any kind, such as electronic communications, emails, SMS messages, instant messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings transmitting information (in the form of facts, ideas, inquiries, or otherwise). The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

4. "Concerning" means without limitation, the following concepts: referring to, regarding, relating, discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, evidencing, estimating, containing, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

5. "Correspondence" means any letter, memorandum, email, or other writing.

6. "Document" means and is equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

7. "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.

8. "King" means King Pharmaceuticals, Inc., King Pharmaceuticals Research and Development, Inc., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

9. "Mutual" means Mutual Pharmaceutical Company, Inc., Pharmaceutical IP Holdings, Inc., Pharmaceutical Holdings Company, Inc., URL Pharma, Inc., United Research Laboratories, Inc., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

10. "Defendants," "you," "your," and "yours" means any or all of King and Mutual, and their predecessor and successor entities, their officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), employees, agents, attorneys, representatives and other persons acting or authorized to act on their behalf.

11. "Elan" means Elan Pharmaceuticals, Inc., Elan Corporation, PLC., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

12. "Eon" means Eon Laboratories, Inc., Eon Pharmaceuticals, Ltd., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners,

officers, directors, employees, agents, legal counsel, or any other person acting on their behalf, including Sandoz.

13. "Sandoz" means Sandoz, Inc. or any of its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf, including Eon.

14. "CorePharma" means CorePharma, LLC or any of its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

15. "SigmaPharm" means SigmaPharm, Inc., a Delaware corporation engaged in the business of the development of pharmaceutical technologies and products, or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

16. "FDA" means the United States Food and Drug Administration, including its departments, committees, subdivisions, or individuals acting on its behalf or under its authority.

17. "FTC" means the United States Federal Trade Commission, including its departments, committees, subdivisions, or individuals acting on its behalf or under its authority.

18. "Skelaxin" means all pharmaceutical products that were or are labeled, marketed, or sold under the trademark or name "Skelaxin" (or any variant thereof), regardless of the dosage strength, dissolution rate, or package size, including but not limited to, the pharmaceutical products described in the New Drug Application No. NDA 13-217, as well as any supplements and/or generic version thereto.

19. "Generic Skelaxin" means any generic drug product that is or was the subject of an application seeking approval from the FDA in which Skelaxin is the reference listed drug.

20. "Minutes" means any document created concerning a meeting, including minutes of a meeting, exhibits and attachments to minutes of a meeting, agendas for meetings (including exhibits, attachments and/or materials distributed or circulated at, or concerning, any meeting including powerpoints or other similar presentations, regardless of whether hard copies were circulated), notices of meetings, waivers of meetings and certification or signatures appended to or referred to in the notices, agendas or minutes.

21. "NDA" means New Drug Application as defined in 21 U.S.C. § 355.

22. "Skelaxin NDA" means NDA No. 13-217, as well as any supplements thereto.

23. "Orange Book" means the FDA publication "Approved Drug Products with Therapeutic Equivalence Evaluations."

24. "Person" means as any natural person or any business, legal, or governmental entity or association.

25. "Petition" means any citizen petition, supplement, comment or related submission filed under 21 C.F.R. § 10.30 and section 505(j) of the federal Food Drug Cosmetic Act.

26. "Patents" means U.S. Patent No. 6,407,128, U.S. Patent No. 6,683,102, and U.S. Patent No. 7,122,566.

27. "PTO" means the U.S. Patent and Trademark Office.

28. "Proposed" means without limitation, the following concepts: proposed, considered, assessed, analyzed, and evaluated, in whole or in part, whether in the context of past, present, or future.

29. The words "and/or," "or" and "and" are used inclusively, not exclusively. As such, "and/or", "or" and "and" should be construed so as to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," you should produce all

information about A and all information about B, as well as all information about A and B collectively.

30. The words "any," "each," and "all" are to be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of documents.

31. As used in these requests, the singular is to be treated as plural and vice-versa.

## II. INSTRUCTIONS

1. Plaintiffs seek production of the documents set forth in the numbered requests below in Defendants' possession, custody, and/or control, including documents in the possession of Defendants' attorneys, accountants, consultants, or other agents, and including all entities included in the definition of "Defendants" above.

2. The terms defined above and the individual requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3. All documents are to be produced in full. If any part of a document is responsive to any request, the whole document is to be produced. Non-responsive portions of otherwise responsive documents may not be redacted.

4. Any alteration of a responsive document, including notes, underlining, stamps, drafts, revisions, modifications and other versions of a final document, is a separate document and is to be produced as a separate document.

5. All documents are to be produced with the file folder, envelope or other container in which the documents are maintained. If, for any reason, the container cannot be produced, copies of all labels or other identifying marks are to be produced instead.

6. If you file a timely objection to any portion of a request, definition, or instruction, documents responsive to the remaining portion are to be produced.

7. If any document is withheld, in whole or in part, for any reason, including but not limited to any claim of privilege of any kind, work-product protection, trade secret, or confidentiality, set forth separately with respect to each document: (a) the nature of the privilege or ground of confidentiality claimed; (b) the type of document; (c) the author(s) of the document; (d) the addressee(s) of the document; (e) all persons who received copies of the document; (f) the date of the document; (g) the general subject matter of the document; and (h) the Bates range of the document. Any privilege log or list is to be produced in an Excel spreadsheet or other format capable of electronic sorting.

8. Any purportedly privileged document containing non-privileged material must be produced, redacting only the portion purportedly privileged.

9. Pursuant to Federal Rules of Civil Procedure 34(b), all electronically stored information is to be produced in native format (including metadata) whenever possible.

10. The headings set forth within the numbered requests below are for convenience and are not intended to affect the meaning or construction of any request.

11. These requests are continuing, and any document discovered or obtained after the service of these requests is to be produced promptly after it is discovered or obtained.

12. Unless otherwise stated, these requests cover the period from July 1, 2002 to the present ("Relevant Time Period").

## DOCUMENT REQUESTS

1. In addition to all electronic data produced in response to Plaintiffs' First Set of Requests For Production of Documents no. 56, please include the following in the same format, from November 1, 2005 to the present:

   a. All indirect sales/chargeback transactions, including fields containing the following information: (i) wholesaler name; (ii) wholesaler number; (iii) wholesaler DEA number; (iv) indirect customer name; (v) indirect customer number; (vi) indirect customer DEA number; (vii) indirect customer complete address; (viii) indirect customer class of trade code; (ix) indirect customer class of trade code description; (x) NDC; (xi) product description; (xii) product form; (xiii) product strength; (xiv) product package size; (xv) date of transaction between the wholesaler and its customer (i.e., the indirect customer); (xvi) date of chargeback payment; (xvii) chargeback amount; (xviii) contract price; (xix) wholesale price; and (xx) number of units sold.

   b. All rebate transactions, including fields containing the following information: (i) customer DEA number; (ii) customer class of trade code; (iii) customer class of trade code description; (iv) product description; and (v) date of rebate payment

2. All documents, reports, or analyses concerning method of payment for Skelaxin, including without limitation documents concerning the portion of Skelaxin sales paid by private third-party payors, Medicaid, and cash payors.

3. All documents identifying any third-party payors, consumers or other entities that paid or reimbursed for all or any portion of Skelaxin from November 1, 2005 to the present.

4. All documents related to any rebates provided to any third-party payors, consumers or other entities that paid or reimbursed for all or any portion of Skelaxin bought at retail or mail order pharmacies related to purchases or reimbursement of Skelaxin from November 1, 2005 to the present.

5. All documents related to any financial assistance provided by King/Mutual to any third-party payors, consumers or other entities that paid or reimbursed for all or any portion of

274215                                 8

Skelaxin from November 1, 2005 to the present, including specifically co-pay coupons, customer assistance or appreciation programs, etc.

6. In addition to all documents produced in response to Plaintiffs' First Set of Requests For Production of documents nos. 51-53, please include documents sufficient to show the following for Skelaxin: (a) gross revenue; (b) net revenue; (c) cost of goods sold; (d) manufacturing cost; (e) sales and distribution cost; (f) marketing, advertising, promotional, and sales expenses; (g) depreciable and capital improvements; (h) research and development expenditures; (i) licensing fees and royalties paid and received; (j) short-run average variable costs; (k) long-run average variable costs; (l) fixed costs; (m) materials cost; (n) labor cost; (o) marginal cost; (p) rebates and discounts; (q) gross profit; (r) net profit; (s) unit volume sold; (t) unit volume sold net of returns; and (u) cost and price analyses.

7. All documents not otherwise responsive to End Payor Plaintiffs' discovery requests that were provided to either King's or Mutual's Board of Directors and which discuss Skelaxin.

Dated: December 14, 2012                    Respectfully Submitted,

/s/ James G. Stranch, III
James G. Stranch, III (TN# 002542)
J. Gerard Stranch, IV (TN# 023045)
Joe P. Leniski, Jr. (TN# 022891)
Michael J. Wall (TN# 024774)
BRANSTETTER, STRANCH & JENNINGS, PLLC
227 Second Avenue North, Fourth Floor
Nashville, TN 37201
Telephone: (877) 369-0267
jims@branstetterlaw.com
gerards@branstetterlaw.com
joeyl@branstetterlaw.com
mwall@branstetterlaw.com

*Lead Counsel for End Payor Plaintiffs*

274215                                    9

Case 1:12-md-02343-CLC-WBC   Document 488-3   Filed 01/08/14   Page 10 of 11   PageID #: 17211

| | |
|---|---|
| George E. Barrett<br>David W. Garrison<br>Barrett Johnston, LLC<br>271 Second Avenue North<br>Nashville, TN 37201<br>Telephone: (615) 244-2202 | Christopher M. Burke<br>Kristen M. Anderson<br>Penelope D. Adbiel<br>Scott + Scott, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>Telephone: (619) 233-4565 |
| Joseph P. Guglielmo<br>Judy Scolnick<br>Scott+Scott LLP<br>500 Fifth Avenue, 40th Floor<br>New York, NY 10110<br>Telephone: (212) 223-6444 | James R. Dugan<br>The Dugan Law Firm<br>365 Canal St., Suite 1000<br>New Orleans, LA 70130<br>Telephone: (504) 648-0180 |
| Christopher A. Seeger<br>Seeger Weiss, LLP<br>77 Water Street, 26th Floor<br>New York, NY 10005<br>Telephone: (212) 584-0700 | Kenneth A. Wexler<br>Edward A. Wallace<br>Bethany R. Turke<br>Justin N. Boley<br>Wexler Wallace LLP<br>55 W. Monroe Street, Suite 3300<br>Chicago, IL 60603<br>Telephone: (312) 346-2222<br>Fax: (312) 346-0022 |

*Counsel for the End Payor Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, a copy of the foregoing was served on counsel for Direct Purchaser Plaintiffs, Indirect Reseller Plaintiffs and the Defendants via electronic mail.

/s/ James G. Stranch, III
James G. Stranch, III (TN# 002542)

274215

10