THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN RE: SKELAXIN (METAXALONE) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>**ALL ACTIONS** | MDL Case No. 1:12-md-2343<br><br>Judge Curtis L. Collier |

**MEMORANDUM IN SUPPORT OF KING'S MOTION FOR PROTECTIVE ORDER DIRECTING PLAINTIFFS TO WITHDRAW THE SUBPOENA SERVED ON KING'S FORMER OUTSIDE COUNSEL FOR PRODUCTION OF DOCUMENTS RELATING TO THE *ELAN V. KING* LAWSUIT**

Plaintiffs' January 2, 2014 Rule 45 subpoena on King Pharmaceuticals LLC's, f/k/a King Pharmaceuticals, Inc., ("King") former outside counsel, Cravath, Swaine & Moore LLP ("Cravath"), seeking production of documents that Plaintiffs' claim are in King's "possession, custody, or control," is an improper end run around Plaintiffs' pending motion to compel many of the same documents, the parties' agreed upon scope of discovery and the regular process for seeking party discovery under Rules 26 and 34 of the Federal Rules of Civil Procedure. *See, e.g.*, *General Parts Distrib., LLC v. Perry*, No. 12-mc-93, 2013 WL 3223374, at *5 (D. Minn. June 25, 2013) ("[T]o the extent [Plaintiff] is trying to do an end-run around its discovery dispute with [defendant], the [Rule 45 non-party] subpoena is improper"). Accordingly, this Court should grant King's Motion for a Protective Order, under Fed. R. Civ. P. 26(c)(1), directing Plaintiffs to withdraw their subpoena served on Cravath.

**BACKGROUND**

On December 10, 2013, Plaintiffs filed an Emergency Motion to Compel King to Produce Documents Relating to the *Elan v. King* lawsuit, [DKT. No. 451] ("Motion to Compel"). Plaintiffs' pending motion to compel, on its face, only seeks to compel King "to

61821953.docx

produce all documents related to the *Elan Corp. v. King Pharmaceuticals, Inc.* litigation pending in the Supreme Court of the State of New York (Case No. 600827/2003, filed Mar. 17, 2003) ("NY Lawsuit")." Motion, at 1, [DKT. No. 451]. Notably, in contrast to the subpoena served on Cravath, the pending motion to compel does not specifically seek to compel King to produce all due diligence documents that preceded King's June 12, 2003 acquisition of Skelaxin from Elan.[1]

On January 2, 2013, the very same day that Plaintiffs filed their reply brief in support of their Motion to Compel, [DKT. No. 481], Plaintiffs served a Rule 45 subpoena on King's former outside counsel that represented King in the NY lawsuit, Cravath. Ex. 1, Third Party Subpoena on Cravath. Plaintiffs' subpoena, issued out of the Eastern District of Tennessee in the Skelaxin MDL and served *after* the operative deadline for the close of discovery, commands *Cravath* – rather than King – to produce an incredibly broad array of documents from Cravath's own files relating to the NY Lawsuit by January 23, 2014, only three weeks from the date of service. In addition, the subpoena also seeks production of the due diligence documents that preceded King's June 12, 2003 acquisition of Skelaxin from Elan. *Id.* In both their moving papers and reply papers in further support of the motion to compel, Plaintiffs argued that any files at Cravath were in King's "possession, custody, or control." Pls.' Memo, at 16-17, [DKT. No. 453]; Pls.' Reply, at 1-2, [DKT. No. 481].

As the Court is well aware from the pending motion to compel, the parties have conferred about and entered into numerous agreements throughout this litigation that defined the scope of discovery from King. Most notable for the instant motion, in response to Plaintiffs' initial Requests for Production, King made a general objection to producing any documents that

---

[1] Plaintiffs' subpoena for "all documents Elan provided to King as due diligence related to the Asset Purchase Agreement," is not limited to those that were from the NY Lawsuit.

preceded King's June 12, 2003 acquisition of Skelaxin from Elan.[2] King also objected to producing any documents relating to King's due diligence related to the acquisition of Skelaxin from Elan, a fact just conceded by Plaintiffs. *See* King's Response to Plaintiffs First Request for Production of Documents, dated May 10, 2013, requests 7 & 8; Reply in Support of their Emergency Motion to Compel the Documents from the NY Lawsuit, at 4, [DKT. No. 481].

Plaintiffs and King met and conferred several times regarding King's objections, including King's general objection to documents preceding King's June 12, 2003 acquisition of Skelaxin from Elan, and King's specific objection regarding the due diligence documents. *See* Ex. 5, Letter from Andrew Solow to Bradley Demuth, dated June 25 2013, at 3; Ex. 6, Letter from Edward Notargiacomo to Andrew Solow, dated June 26, 2013, at 1. Based on these discussions, the parties entered into an agreement on the scope of search terms and custodians that would fulfill King's document production obligations in the absence of "extenuating circumstances." Indeed, this agreement was reached with the "explicit goal of reducing, if not completely eliminating the grounds for any future discovery disputes regarding King's electronic search terms and or custodians." *See* Ex. 7, Letter from Andrew Solow to Edward Notargiacomo dated July 12, 2013; Ex. 8, Letter from Andrew Solow to Edward Notargiacomo dated July 24, 2013. That same agreement became part of a stipulation filed with this Court to resolve Plaintiffs' August 2013 motion to compel regarding the timing of King's (and Mutual's) document production. *See* Stipulation By and Among The Parties Regarding Resolution of Pls.' Emergency Mot. to Compel Defendants to Expedite Production of Documents, dated August 14,

---

[2] *See* Ex. 2, King's Response to Plaintiffs First Request for Production of Documents, dated May 10, 2013, at General Objection 2; Ex. 3, King's Response to the IPPs' Second Request for Production of Documents, dated May 10, 2013, at General Objection 2; Ex. 4 King's Response to EPPs' Second Request for Production of Documents, dated May 10, 2013, at General Objection 2.

2013, at Para. 5 [DKT. No. 340] (incorporating by reference Ex. 8, Letter from Andrew Solow to Edward Notargiacomo dated July 24, 2013).

Until their recent motions, Plaintiffs have never challenged either King's General Objection 2 or King's specific objection to producing the due diligence documents that preceded King's June 12, 2003 acquisition of Skelaxin from Elan.

Plaintiffs attempted to justify their need for the NY Lawsuit documents – *despite their failure <u>ever</u> to request them from King through traditional document requests* – by arguing that Plaintiffs could not have reasonably known about the substance of the NY Lawsuit until King had produced the *publicly available* Complaint and Counterclaims, Pls.' Memo, at 11, [DKT. No. 453], despite the fact that the lawsuit was the subject of substantial, national press coverage. *See* footnote 3, *infra*. King opposed that motion, arguing that Plaintiffs' lack of due diligence into a very public litigation hardly qualified as extenuating circumstances. Defendants Memorandum in Opposition to Plaintiffs' Motion to Compel, [DKT. No. 471]. Plaintiffs argue in their Reply in Support of their Motion to Compel, [DKT. No. 481] that the national newspapers made no reference to the allegations and claims from the case, and that Plaintiffs had no way to know why King tried to back out of the Skelaxin purchase. However the nationally published articles discussed by Defendants in their Opposition to Plaintiffs' Motion to Compel, [DKT. No. 471] do indeed reveal these facts.[3]

---

[3] *See Elan Files Suit to Force King to Complete Deal, U.S.A. Today, March 17, 2003,* http://usatoday30.usatoday.com/money/industries/health/drugs/2003-03-17-elan-king-suit_x.htm# ("King said Friday that it might back out of the deal because the U.S. Federal Trade Commission has opened an investigation into whether Elan illegally suppressed competitors' efforts to produce generic rivals to Skelaxin, which is known in its generic form as metaxalone."); *Elan, King to Complete Drug Sale After Settling Suit (Update6)* Bloomberg (May 20, 2003) http://www.bloomberg.com/apps/news?pid=21070001&sid=aQAR5hUWiPpU ("King tried to cancel the agreement in March, two months after its original offer, because of the U.S. Federal Trade Commission probe. Elan sued, and the FTC ended its investigation earlier this

# ARGUMENT

## I. PLAINTIFFS ARE ATTEMPTING TO CIRCUMVENT THEIR DISPUTE WITH KING AND THE TRADITIONAL RULES/PROCESSES OF DISCOVERY

It is well-recognized that a party to a lawsuit cannot use Rule 45 to obtain another party's documents, either as an end-run around a discovery dispute or the requirements of Rules 26 and 34. *See, e.g.*, *General Parts Distrib., LLC*, 2013 WL 3223374, at *5 ("[T]o the extent [Plaintiff] is trying to do an end-run around its discovery dispute with [defendant], the [Rule 45 non-party] subpoena is improper"); *Thomas v. IEM, Inc.*, No. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) ("Rule 45 subpoenas . . . are 'clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34.'" (citations omitted)); *see also, Dixon v. 24th Judicial Dist. Court*, No. 12-3026, 2013 WL 4517932, at *2 (E.D. La. Aug. 23, 2013) ("A Rule 45 subpoena is an improper vehicle through which to request documents from an opposing party as it circumvents the time to produce documents allowed under Rule 34."). As the district court explained in *General Parts Distribution, LLC*, "[I]t may be appropriate to prohibit a party from obtaining discovery from a non-party if that same discovery is available from another party to the litigation," particularly given that the "concern about the burden on non-parties carries 'special weight'" under Rule 45. 2013 WL 3223374, at *4.

Here, Plaintiffs' motion to compel the same NY Lawsuit documents from King makes it abundantly clear that Plaintiffs are attempting to use the Cravath subpoena solely to circumvent their dispute with King and the traditional rules of party discovery. In fact,

---

month." . . . "for King to win. . . [t]he company would have had to prove there was a 'material adverse change' in the conditions of the transaction. . . King would have needed to produce evidence that Elan either hid or misrepresented critical information, or that circumstances have changed since the deal was reached").

Plaintiffs' Reply in Support of their Emergency Motion to Compel the Documents from the NY Lawsuit, [DKT. No. 481], specifically discusses these documents stating that this subpoena was served to "ensure they obtain" these documents. Plaintiffs' own language shows that their subpoena is simply an attempt to circumvent the discovery process by giving themselves a second opportunity to procure these documents, notwithstanding how the Court rules on their pending motion.

Plaintiffs' subpoena also seeks "[a]ll documents Elan provided to King as due diligence related to the Asset Purchase Agreement." Ex. 1, Third Party Subpoena on Cravath. These are the same documents sought by Plaintiffs First Request for Production of Documents to King, which requested "[a]ll communications concerning any due diligence concerning King's purchase of Skelaxin." *See* Ex. 9 Plaintiffs First Request for Production of Documents, dated November 30, 2012, at 11. As discussed above, King objected to this request, and other similar document requests, based on King's unopposed June 12, 2003 discovery date restriction. Until Plaintiffs filed their recent Motion to Compel, they took no issue with this objection. However, these diligence files would naturally predate the June 12, 2003 cutoff date. Therefore, since Plaintiffs are asking again for the same documents they requested over a year ago — a request King objected to — and discovery has now closed, this is clearly just an attempt to expand discovery and circumvent the discovery process.

Additionally, Plaintiffs have repeatedly argued that the documents subject to their Subpoena are within King's "possession, custody, and control." Pls.' Memo, at 16-17, [DKT. No. 453]; Pls.' Reply, at 1-2, [DKT. No. 481]. Therefore, this subpoena is nothing more than an additional request by Plaintiffs for the production of documents King has objected to, and which Plaintiffs did not challenge. King has made its final document production subject to the

Stipulation By and Among The Parties Regarding Resolution of Pls.' Emergency Mot. to Compel Defendants to Expedite Production of Documents, dated August 14, 2013, [DKT. No. 340]. *See* Management Order, dated October 31, 2012, [DKT. No. 61] (stating '[a]ll fact discovery shall be completed on or before **December 31, 2013"**) (*emphasis in original*). Thus, by serving this subpoena on Cravath for documents in King's possession, custody and control, after discovery has closed, Plaintiffs are clearly circumventing the discovery process. Regardless of whether Plaintiffs' motive in serving the subpoena is to avoid having to request these same documents from King, or to circumvent this Court's discovery deadlines and the protections of Rule 34, Plaintiffs' Subpoena is plainly improper.

## II. THIS THIRD PARTY SUBPOENA IMPOSES AN UNDUE BURDEN ON CRAVATH

Furthermore, the burden and expense to be imposed on Cravath in complying with the subpoena is even greater than the burden would be to King, which is explained in King's opposition to Plaintiffs' motion to compel, because, among other reasons, Cravath is a non-party that has no interest in this litigation, the requested documents potentially include privileged material, and the subpoena seeks information that is (i) not in Cravath's possession, custody or control; (ii) cumulative or duplicative; (iii) public, already in plaintiffs' possession or otherwise available from other sources to which plaintiff has access; (iv) available from a party in this action; or (v) otherwise available through a more convenient, more efficient, less burdensome or less expensive means than this Subpoena. *See* Cravath Responses and Objects of Non-Party Cravath, Swaine & Moore LLP to Plaintiff's Subpoena to Produce Documents. Complying with this subpoena would require an enormously burdensome review for responsiveness and privilege. The subpoena requests documents from Cravath that are protected by the attorney-client privilege, the work-product doctrine, the joint-defense, common-interest

privilege, the settlement privilege, any other applicable privilege, protection or immunity or is otherwise protected from disclosure under applicable law. *Id*. King has not, and is not, waiving any claim of privilege for these documents. Therefore the Court should require Plaintiffs to withdraw their third party subpoena. *See General Parts Distribution, LLC*, 2013 WL 3223374, at *4 ("[I]t may be appropriate to prohibit a party from obtaining discovery from a non-party," particularly given that the "concern about the burden on non-parties carries 'special weight'" under Rule 45.)

## CONCLUSION

As part of the Court's resolution of Plaintiffs' Motion to Compel King to Produce Documents Relating to the NY lawsuit, the Court should grant the instant motion and direct Plaintiffs to withdraw their January 2, 2014 subpoena served on Cravath,

Dated: January 17, 2014

Respectfully submitted,

/s/ Saul P. Morgenstern
SAUL P. MORGENSTERN
ANDREW K. SOLOW
KARIN E. GARVEY
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-7210
Fax: (212) 836-6333
AUBREY B. HARWELL, JR.
GERALD D. NEENAN
JEFFREY HOWARD GIBSON
Neal & Harwell, PLC
150 4th Avenue North
Suite 2000
Nashville, TN 37219
Tel: (615) 244-1713
Fax: (615) 726-0573
*Attorneys for King Pharmaceuticals LLC, f/k/a King Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 17, 2013, a copy of the foregoing was served electronically on counsel of record for all parties through the Court's CM/ECF system.

>   /s/ Gerald D. Neenan
>   Gerald D. Neenan
>   Neal & Harwell, PLLC
>   One Nashville Place, Suite 2000
>   150 Fourth Avenue, North
>   Nashville, TN 37219
>   Telephone: (615) 244-1713
>   Facsimile: (615) 726-0573
>   gneenan@nealharwell.com

61821953.docx