THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| In Re: | Lead Case No. 2:12-cv-4 |
|---|---|
| SKELAXIN (METAXALONE) ANTITRUST LITIGATION | MDL No. 2343 |
| | Judge Curtis L. Collier |
| **THIS DOCUMENT RELATES TO:** All Indirect Purchaser for Resale Actions | |

**MEMORANDUM IN SUPPORT OF INDIRECT PURCHASER FOR RESALE PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 30, 2014 ORDER DENYING CLASS CERTIFICATION**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. The Court Should Reconsider Its January 30, 2014 Order ................................. 2

III. The Court Should Certify the Four Proposed Subclasses ................................... 3

    A. The Named Plaintiffs Purchased Skelaxin in the Subclass States .......................... 3

    B. Individualized Issues as to Place of Purchase for a Handful of Multistate Chain Pharmacies Do Not Predominate over Common Issues Affecting All Subclass Members ................................................................. 5

IV. Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

                                                                    Page(s)

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) .......................................................7

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ......................................................................................................7

*Chiste v. Hotels.com L.P.*
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)..........................................................................................5

*Cummings v. Connell,*
    316 F.3d 886 (9th Cir.2003) .......................................................................................................9

*Glendon Energy Co. v. Borough of Glendon,*
    836 F. Supp. 1109 (E.D. Pa. 1993) .............................................................................................3

*Henderson v. Walled Lake Consol. Sch.*,
    469 F.3d 479 (6th Cir. 2006) ......................................................................................................1

*In re Brazilian Blowout Litig.*,
    No. CV 10-8452, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ............................................9

*In re Moncier*,
    No. 1:08-MC-9, 2008 WL 3981491 (E.D. Tenn. Aug. 22, 2008) .............................................2

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ......................................................................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07–1827 SI, C 11–0058 SI, 2011 WL 5922966 (N.D. Cal. Nov. 28, 2011).................8

*Inventory Locator Serv., LLC v. Partsbase, Inc.*,
    No. 02-2695 MA/V, 2005 WL 2179185 (W.D. Tenn. Sept. 6, 2005) ......................................5

*Johnson v. Dollar Gen. Corp.*,
    No. 2:06-CV-173, 2007 WL 2746952 (E.D. Tenn. Sept. 20, 2007)..........................................3

*Morris v. Transouth Fin. Corp.*,
    175 F.R.D. 694 (M.D. Ala. 1997)...............................................................................................9

*O'Connor v. Boeing N. Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) ................................................................................................7

*Panetta v. Sap Am., Inc*,
   Civ. A. No. 05-4511, 2006 WL 2711747 (E.D. Pa. Sept. 20, 2006), *aff'd* 294 F. App'x
   715 (3d Cir. 2008)..................................................................................................3

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
   89 F. App'x 949 (6th Cir. 2004) ............................................................................3

*Rottner v. AVG Technologies USA, Inc.*,
   943 F. Supp. 2d 222 (D. Mass. 2013) ...................................................................5

*Stalker v. MBS Direct, LLC*,
   No. 10-11355, 2012 WL 6642518 (E.D. Mich. Dec. 20, 2012) ..............................5

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ...............................................................................7

*Tenuto v. Transworld Sys., Inc.*,
   No. CIV. A. 99-4228, 2000 WL 1470213 (E.D. Pa. Sept. 29, 2000) ....................10

*Trollinger v. Tyson Foods, Inc.*,
   No. 4:02-CV-23, 2006 WL 2924938 (E.D. Tenn. Oct. 10, 2006) ......................6, 8

*United States v. Jarnigan*,
   No. 3:08-CR-7, 2008 WL 5248172 (E.D. Tenn. Dec. 17, 2008)............................1

I.  **Introduction**

Indirect Purchaser for Resale Plaintiffs ("IPPs") respectfully seek reconsideration of the Court's January 30, 2014 order denying class certification (ECF No. 508) ("Order"). This motion for reconsideration is based on one narrow issue: whether the Court should certify four subclasses consisting of pharmacies that purchased Skelaxin in California, Michigan, Mississippi, and New York. The Court previously declined to certify these subclasses because it found that (1) IPPs had not established that the class representatives purchased Skelaxin in those states, Order at 64; and (2) class certification was precluded because of individualized issues as to the states in which chain pharmacies with operations in multiple states made their purchases. Order at 65. With respect, IPPs submit that these findings were erroneous and therefore request that the Court reconsider its ruling and grant certification of these four subclasses.[1]

*First*, the record before the Court demonstrates that the four class representatives did purchase Skelaxin in California, New York, Michigan, and Mississippi, respectively, and there was never any dispute between the parties on this point. Each of the class representatives operates its business—and purchases Skelaxin—only in the state where it is based.

*Second*, any individualized issues as to the place of purchase for multistate chain pharmacies affect just a handful of the thousands of subclass members and therefore do not

---

[1] IPPs also respectfully disagree with the Court's ruling on the applicability of Tennessee law to the claims of a nationwide class. However, mere disagreement with a court's conclusions on an issue of law cannot support a motion for reconsideration. *See United States v. Jarnigan*, No. 3:08-CR-7, 2008 WL 5248172, at *5 (E.D. Tenn. Dec. 17, 2008). For this reason, IPPs have limited their reconsideration request to the issue identified above, which is based on "a clear error of law" and is necessary "to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir.2005)). IPPs reserve all their rights as to certification of the nationwide class, including their right to seek appellate review at an appropriate time.

predominate over the numerous common issues in this litigation and go only to the amount of damages for each subclass.

Accordingly, IPPs respectfully request that the Court reconsider its January 30, 2014 order and certify the following four subclasses:[2]

> California Subclass: All persons and entities that indirectly purchased Skelaxin for resale in California at any time during the period November 4, 2005 through and until the anticompetitive effects of Defendants' conduct ceased or ceases (the "Class Period").
>
> Michigan Subclass: All persons and entities that indirectly purchased Skelaxin for resale in Michigan at any time during the period November 4, 2005 through and until the anticompetitive effects of Defendants' conduct ceased or ceases (the "Class Period").
>
> Mississippi Subclass: All persons and entities that indirectly purchased Skelaxin for resale in Mississippi at any time during the period November 4, 2005 through and until the anticompetitive effects of Defendants' conduct ceased or ceases (the "Class Period").
>
> New York Subclass: All persons and entities that indirectly purchased Skelaxin for resale in New York at any time during the period November 4, 2005 through and until the anticompetitive effects of Defendants' conduct ceased or ceases (the "Class Period").

**II.     The Court Should Reconsider Its January 30, 2014 Order**

This Court has "inherent authority to reconsider, amend, and change its decisions." *In re Moncier*, No. 1:08-MC-9, 2008 WL 3981491, at *1 (E.D. Tenn. Aug. 22, 2008) (Collier, J.); *see*

---

[2] Although IPPs believe their originally proposed subclasses were properly limited to purchases made in each subclass state, these proposed subclasses are modified slightly from those set out in IPPs' original motion to make clear that membership turns on purchases in the state, not just operation of a business in the state. *See* Order at 64 (considering whether "the Court could alter the language of the class definition to include only those companies that *purchased* the Skelaxin in the subclass states") (emphasis in original). IPPs otherwise incorporate by reference their prior arguments as to the propriety of class certification, including the appropriateness of the overcharge as the measure of damages and the inapplicability of a pass-on defense under the relevant state laws. IPPs anticipate moving this Court for leave to file an amended complaint adding pharmacy plaintiffs located in a small number of additional states, or filing a new complaint on behalf of such plaintiffs, and thereafter seeking certification of additional subclasses for those states on the same grounds.

2

*also Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 WL 2746952, at *2 (E.D. Tenn. Sept. 20, 2007) (Collier, J.) (granting motion for reconsideration). In the Sixth Circuit, reconsideration is appropriate "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Panetta v. Sap Am., Inc*, Civ. A. No. 05-4511, 2006 WL 2711747 (E.D. Pa. Sept. 20, 2006), *aff'd Panetta v. SAP Am., Inc.*, 294 F. App'x 715 (3d Cir. 2008) (citing *North River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995); *New Chemic (U.S.), Inc. v. Fine Grinding Corp.,* 948 F. Supp. 17, 18-19 (E.D. Pa. 1996)). A motion for reconsideration should "address [] only factual and legal matters that the court may have overlooked" and should not "ask the [c]ourt to rethink what it had already thought through—rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon,* 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citations and internal alterations omitted).

Here, IPPs respectfully submit that this Court overlooked factual matters in the record in reaching its conclusion that certification of the state subclasses was inappropriate, and therefore, certification of the state subclasses is necessary "to correct a clear error or prevent manifest injustice."

### III. The Court Should Certify the Four Proposed Subclasses

#### A. The Named Plaintiffs Purchased Skelaxin in the Subclass States

Although this Court stated that "there[was] no proof to suggest any of the named plaintiffs purchased Skelaxin" in their respective states of operation, Order at 64, Defendants have never disputed that the four named plaintiffs purchased Skelaxin in California, Michigan, Mississippi, and New York, respectively, and the record evidence shows that they did so.

3

As Defendants observed in their opposition, brief, the named plaintiffs "are small 'mom and pop'-style businesses," Opp. at 6, each of which operates within a single state:

- "Johnson's is an independent pharmacy located in Mayville, New York." Opp. at 12 (citing Johnson Dep. at 10:15-18).

- "Knight is an independent pharmacy located in Grand Blanc, Michigan." Opp. at 15; *see also* Morgenstern Decl., Ex. C (Allen Dep.), at 64:18-21.

- "Bidwell is an independent pharmacy located in Chico, California." Opp. at 17 (citing Ahiligwo Dep. at 23:20-23).

- "Russell's is an independent pharmacy located in Lexington, Mississippi." Opp. at 18 (citing Russell Dep. at 243:11-13); *see also* Morgenstern Decl., Ex. F (Russell Dep.), at 243:14-19 (testifying that Russell's has no offices off premises).

As Defendants conceded in their briefing, "[t]he thousands of independent pharmacies in the proposed class . . . presumably bought Skelaxin and metaxalone—and thus were injured by the allegedly higher prices—in their **home states** . . . ." Opp. at 25 (emphasis added); *see also id.* (arguing that "the place of purchase" for independent pharmacies was "presumably . . . where those pharmacies are located"). Thus, Defendants argued that "[i]f a pharmacy with operations only in Kentucky purchased Skelaxin only in Kentucky, then Kentucky law . . . would apply." *Id.* at 28-29. Their expert agreed. Hughes Decl. ¶ 71 ("For pharmacies with a single location in which all business is conducted, like named Plaintiff Johnson's, this distinction [between place of purchase and place of dispensing] has no practical significance. The purchase from the wholesaler and the dispensing to consumers is done from a single location.").

The Court correctly noted that the declarations submitted by each of the named plaintiffs do not specifically indicate "where" that independent pharmacy purchased Skelaxin and metaxalone, Order at 64 n.20, but that is because pharmacies with operations at a single location in a single state necessarily purchased pharmaceutical products in that state. The record reflects that each of the named plaintiffs made these purchases in its home state. *See* Morgenstern Decl.,

4

Ex. C (Allen Dep.), at 64:13-21 (testifying that Knight in Grand Blanc, Michigan made purchases only "for that specific pharmacy"); 77:19-23 (testifying that drugs are delivered to Knight from a warehouse in Michigan); Morgenstern Decl., Ex. D (Ahiligwo Dep.), at 26:12-23 (testifying that Bidwell placed orders from computers located at its pharmacy in Chico, California, and the drugs arrived at the store the following day); *id.* at 83:16-25 (identifying invoice to Bidwell); Morgenstern Decl., Ex. E (Johnson Dep.), at 277:9-278:10 (testifying that Johnson's receives a statement from its wholesaler and faxes a check to the wholesaler from the pharmacy in Mayville, New York); Morgenstern Decl., Ex. F (Russell Dep.), at 74:1-21 (testifying that wholesaler sends invoices that are paid by Russell's in Lexington, Mississippi); 62:19-63:3 (testifying that Russell's wholesaler has a sales representative in Mississippi).[3]

### B. Individualized Issues as to Place of Purchase for a Handful of Multistate Chain Pharmacies Do Not Predominate over Common Issues Affecting All Subclass Members

Just as the four named Plaintiffs purchased Skelaxin and metaxalone in the sole state where they did business, the same is true for the "[t]housands of independent pharmacies in the proposed class," as Defendants acknowledged in their brief. Opp. at 25. Indeed, the only issue Defendants raised on this point was their suggestion that the analysis is "more complicated for

---

[3] Courts have routinely concluded that a plaintiff's place of purchase (including for internet purchases) is synonymous with the plaintiff's domicile at the time of purchase when the plaintiff is located in a single state. *See*, *e.g.*, *Stalker v. MBS Direct, LLC*, No. 10-11355, 2012 WL 6642518 (E.D. Mich. Dec. 20, 2012) (applying the consumer protection and fraud law of each potential class member's home state for textbooks purchased over the internet); *Rottner v. AVG Technologies USA, Inc.*, 943 F. Supp. 2d 222, 227 (D. Mass. 2013) (determining, for choice of law purposes, that a contract was formed, negotiated and performed in California because a California resident purchased the license to install the subject app on his computer in California); *Chiste v. Hotels.com L.P.* 756 F. Supp. 2d 382, 395, 408 (S.D.N.Y. 2010) (determining, for choice of law purposes, that "contracts were entered into in different states where Plaintiffs accessed the Internet to use Defendants' websites"); *Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 02-2695 MA/V, 2005 WL 2179185 (W.D. Tenn. Sept. 6, 2005) (determining the place of injury for choice of law purposes was where the plaintiff was located).

5

chain pharmacies or other pharmacies with multiple locations." Opp. at 25 n.13. But Defendants conceded that this affected only "a **relatively limited number** of large corporate entities that operate retail pharmacies outlets in multiple states." Opp. at 30 n.16 (emphasis added).

Indeed, just **nine** large, multi-state chains are headquartered in one of the four subclass states, compared to a total of **16,223** pharmacies in those four subclass states. *Compare* Lamb Decl. ¶ 59 & Table 3 (6,938 pharmacies in California, 3,070 pharmacies in Michigan, 1,183 pharmacies in Mississippi and 5,032 pharmacies in New York) *with* PowerRX Players: Profiles of the Kings of Retail Pharmacy," *Drug Store News*, Apr. 22, 2013, available at http://www.drugstorenews.com/sites/drugstore news.com/files/042213 _TopRetailersOnline.pdf (indicating that of the fifty pharmacy chains accounting for approximately 85 percent of pharmaceutical sales, just four are in California, two are in Michigan, three are in New York, and none are in Mississippi); *see also* Hughes Decl. ¶ 71 & Lamb Reply Decl. ¶ 34 n.57 (citing "PowerRX Players: Profiles of the Kings of Retail Pharmacy").[4] Thus, to the extent individual analyses were required for multistate pharmacies in the proposed subclasses, it would only be for **five-hundredths of one percent** (0.05%) of subclass members.

Significantly, in finding that "identifying which of the proposed class members actually 'purchased' the Skelaxin in which state would require individualized inquiries," Order at 62, the Court did **not** make a finding that any such individualized inquiries would **predominate** over common issues. Fed. R. Civ. P. 23(b)(3); *see also Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2006 WL 2924938, at *6 (E.D. Tenn. Oct. 10, 2006) (Collier, J.) ("mere fact that questions peculiar to each individual member of the class remain after the common questions of the

---

[4] One of the Michigan chains is Meijer, which filed its own direct purchaser action and therefore would not be a member of the proposed subclass. Therefore, only eight of the top fifty pharmacy chains would be members of one of the four subclasses.

6

defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible") (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)).

In addition, to the extent that there are any individualized issues regarding state of purchase, they relate only to estimation of the **amount** of damages and should not preclude class certification. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) ("'[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.'") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) ("[T]he mere fact that there might be differences in damage calculations is not sufficient to defeat class certification.").

Defining the subclasses as including pharmacies that purchased Skelaxin in one of four states makes it readily ascertainable. *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (holding that class members need not be identifiable by name, so long as the "general outlines" of the class are "determinable").[5] If it became necessary to develop a record as to the purchasing practices of a handful of multistate pharmacies in order to estimate damages, that could be done without overwhelming the numerous common issues in the case, including as to Defendants' liability.

---

[5] As the Court noted in addressing the EPPs' motion for class certification, a class is ascertainable even if there would be a "large number of individual determinations [required] in order to ascertain class membership." Order at 19 (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). Here, at most a very small number of individual determinations would be required.

7

For present purposes, the methodology proposed by Dr. Lamb in his reply declaration—which uses headquarters locations as a proxy for place of purchase for the top fifty pharmacy chains—should be deemed sufficient at this stage. *Trollinger*, 2006 WL 2924938, at *11 ("At the class certification stage, 'it is not necessary to identify specific benchmarks or methodology to ascertain the amount of damages.'") (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 349 (E.D. Mich. 2001)); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) ("[W]e have never required a precise mathematical calculation of damages before deeming a class worthy of certification.") (citing *Olden v. LaFarge Corp.,* 383 F.3d 495, 508 (6th Cir. 2004)). If one of the handful of chain pharmacies whose damages are currently included in one of the four subclass states were found to purchase Skelaxin in another state, those damages could easily be removed from the calculation.[6]

In finding this methodology "unsatisfactory," the Court stated only that it would not "be consistent with the class definition were the Court to alter it to correctly rely on the state where the Skelaxin was purchased by Indirect Purchasers." Order at 65. But as Dr. Lamb explained, location of headquarters is intended to serve as a reasonable proxy **for** place of purchase. Lamb Reply Decl. ¶ 35. Indeed, Defendants themselves took the position—in opposing the EPPs' separate motion for class certification—that injury to a class member doing business in multiple states occurs at its principal place of business. ECF No. 281, at 44; *cf.* Order at 64 n.19 (noting this inconsistency).

At this stage of the litigation, it is reasonable to assume that the vast majority of chain pharmacies—if not all of them—make their purchases in the state where they are headquartered.

---

[6] By contrast, Dr. Lamb has not estimated any subclass damages for chain pharmacies headquartered outside one of the subclass states. His methodology is therefore conservative and does not require any individualized determinations for any chain pharmacies located in another state.

That is the lesson of the principal case on this issue cited by Defendants in their sur-reply—
which the Court permitted despite observing that it violated the local rules, Order at 1 n.2—*In re
TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI, C 11–0058 SI, 2011 WL 5922966
(N.D. Cal. Nov. 28, 2011). In that case, the court concluded that the law applicable to Costco's
claim was the law of Washington, where it was headquartered, despite allegations that
"[r]egional offices decide on the amount of a given product their stores need," "[a]bout 40% of
all Costco purchases were ordered from and received in California," and "[m]any headquarters
functions continued in California for years after the merger" with Price Club. *Id.* at *1.

Thus, it is difficult to overcome a presumption that the headquarters location is the place
of purchase. In their sur-reply, Defendants offered only speculation that "[t]here may be many
retailers who purchased Skelaxin or metaxalone through a separate subsidiary or department
located in a different state from the location of that retailer's headquarters." Sur-Reply at 10.
Such speculation is not an appropriate basis on which to deny class certification. *See Cummings
v. Connell,* 316 F.3d 886, 896 (9th Cir.2003) (citing *Soc. Servs. Union, Local 535 v. County of
Santa Clara*, 609 F.2d 944, 948 (9th Cir.1979) ("Mere speculation as to conflicts that may
develop at the remedy stage is insufficient to support denial of initial class certification.")); *In re
Brazilian Blowout Litig.*, No. CV 10-8452, 2011 WL 10962891, at *6 (C.D. Cal. Apr. 12, 2011)
("The Court will not deny class certification based on the mere speculation that the amount of
formaldehyde in Defendant's products may have varied."); *Morris v. Transouth Fin. Corp.*, 175
F.R.D. 694, 700-01 (M.D. Ala. 1997) ("The court declines to deny certification based on
speculation about the number of potential counterclaims. If there are a significant number of
class members who would be subject to counterclaims, then a subclass may be appropriate. If the
number of class members subject to counterclaims is large, then the class definition could be

amended to remove them.") (citations omitted); *Tenuto v. Transworld Sys., Inc.*, No. CIV. A. 99-4228, 2000 WL 1470213, at *3 (E.D. Pa. Sept. 29, 2000) ("The court will not deny class certification based on defendant's speculation, particularly when the court can modify the class if necessary after the conclusion of discovery.").

If the Court grants certification of the proposed subclasses, it could permit the parties limited additional discovery to address whether Defendants' speculation is accurate, possibly to include third party discovery relating to the chain pharmacies. Alternatively, the "big three" wholesalers (Amerisource, Cardinal, and McKesson) could provide discovery on the states from which their customers paid invoices. IPPs previously served subpoenas on these wholesalers—which Defendants have stated collectively account for over 85% of direct purchases of Skelaxin, ECF No. 373 at 3-4—but no documents were produced to IPPs by the wholesalers following Defendants' stipulation that they "will not further brief or argue that the information sought [from the wholesalers] is needed to address the Indirect Purchasers' claimed damages or any other aspect of their case." ECF No. 267, at 2. Should Defendants now insist, contrary to their stipulation, that IPPs must obtain information from the wholesalers as to place of purchase, IPPs should be given an opportunity to do so.

## IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its January 30, 2014 order denying class certification and grant certification of four subclasses consisting of indirect purchasers for resale in California, Michigan, Mississippi, and New York.

10

Case 1:12-md-02343-CLC-WBC Document 523 Filed 02/12/14 Page 14 of 17 PageID #: 17845

Respectfully submitted,

Dated: February 12, 2014.                 /s/ *Gordon Ball*
                                          Gordon Ball
                                          LAW OFFICES OF GORDON BALL
                                          7001 Old Kent Drive
                                          Knoxville, TN 37919
                                          Tel: (865) 525-7028

                                          *Lead Counsel for the Indirect
                                          Purchaser for Resale Class*

                                          Brent W. Landau
                                          HAUSFELD LLP
                                          1604 Locust Street, Second Floor
                                          Philadelphia, PA 19103
                                          Tel: (215) 985-3273

Kimberly A. Kralowec                      Michael D. Hausfeld
Kathleen Styles Rogers                    Nathaniel C. Giddings
THE KRALOWEC LAW GROUP                    HAUSFELD LLP
188 The Embarcadero, Suite 800            1700 K Street, Suite 650
San Francisco, CA 94105                   Washington, DC 20006
Tel: (415) 546-6800                       Tel: (202) 540-7200

Scott H. McNutt                           *Additional Counsel for Indirect
Shane Moses                               Purchaser for Resale Plaintiffs
MCNUTT LAW GROUP, LLP                     Johnson's Village Pharmacy, Inc., Russell's
188 The Embarcadero, Suite 800            Mr. Discount Drugs, Inc., and Bidwell
San Francisco, CA 94105                   Pharmacy and Medical Supply, Inc.*
Tel: 415-995-8475

                                          Robert L. Bowman
*Additional Counsel for Indirect Purchaser for*   KRAMER RAYSON LLP
*Resale Plaintiff Bidwell Pharmacy &*     800 S. Gay Street, Suite 2500
*Medical Supply, Inc.*                    Knoxville, TN 37929
                                          Tel: (865) 525-5134

Keith D. Stewart                          Tom Jessee
BURROUGHS, COLLINS & NEWCOMB,             JESSEE & JESSEE
PLC                                       412 E. Unaka Ave.
900 South Gay Street, Suite 600           Johnson City, TN 37601
Post Office Box 551                       Tel: (423) 928-7176
Knoxville, TN 37901-0551
Tel: (865) 342-1040
Fax: (865) 342-1041

11

Lee Albert
Gregory B. Linkh
GLANCY BINKOW & GOLDBERG LLP
122 East 42nd Street, Suite 2920
New York, NY 10168
Tel: 212-682-5340

*Additional Counsel for Indirect Purchaser for Resale Plaintiff Knight Pharmacy, Inc.*

Arthur N. Bailey
ARTHUR N. BAILEY & ASSOCIATES
111 West Second Street, Suite 4500
Jamestown, NY 14701
Tel: (716) 664-2967

Don Barrett
BARRETT LAW GROUP, P.A.
404 Court Square North
Lexington, MS 39095
Tel: (662)834-2488

*Additional Counsel for Indirect Purchaser for Resale Plaintiffs Johnson's Village Pharmacy, Inc. and Russell's Mr. Discount Drugs, Inc.*

*Counsel for the Proposed Indirect Purchaser for Resale Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, a copy of the foregoing was electronically served on counsel of record for all parties via the Court's CM/ECF system.

Dated:  February 12, 2014.                     /s/ *Brent W. Landau*
                                                Brent W. Landau
                                                HAUSFELD LLP
                                                1604 Locust Street, Second Floor
                                                Philadelphia, PA 19103
                                                Tel: (215) 985-3273