# EXHIBIT 4

Skelaxin Direct Purchaser Antitrust Litigation
c/o Rust Consulting, Inc.
P.O. Box 1849
Faribault, MN 55021-3849

IMPORTANT COURT-ORDERED DOCUMENT



Claimant ID #«Claimant_ID» - «Sequence»
«Name_1»
«Name_2»
«Name_3»
«Address_1»
«Address_2»
«City», «State»  «Zip5» «Zip4»

*In re: Skelaxin (Metaxalone) Antitrust Litigation*
United States District Court for the Eastern District of Tennessee
MDL No. 2343

### SKELAXIN DIRECT PURCHASER PROOF OF CLAIM AND RELEASE

*(If purchases were made in a name other than the claimant's name, please attach documentation of your right to assert a claim with respect to those purchases)*

---

**PART 1: CLAIMANT IDENTIFICATION**

Employer Tax Identification Number:_____
*(If you fail to include this tax information, your claim may not be paid.)*

Person to contact if there are questions regarding this claim:
_____

Daytime Phone Number: (_____)_____   Fax Number: (_____)_____

E-Mail Address:_____

---

### INTRODUCTION

On September xx, 2014, the Court in this case approved a settlement between plaintiffs Professional Drug Company, Inc., Meijer, Inc., Meijer Distribution, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors and Stephen L. LaFrance Holdings, Inc. and Ahold USA, Inc. (together, "Plaintiffs"), individually and on behalf of the direct purchaser class (the "Class" or the "Direct Purchaser Class") and with defendants King Pharmaceuticals, Inc. and Mutual Pharmaceutical Company, Inc. (together "Defendants") for $73,000,000.00. The notice of class action settlement ("Settlement Notice") dated April 30, 2014, which was mailed to you on June 13, 2014, summarizes both the litigation and the terms of the Settlement. The purpose of this Proof of Claim and Release is to ensure that you are able to participate in the distribution of the Settlement Fund, net of attorneys' fees, incentive awards, and costs awarded by the Court (referred to below as the "Net Settlement Fund"). **In order for the Settlement Administrator to make the proper calculation of your** *pro rata* **share of the Net Settlement Fund, please either (i) simply agree to the aggregate purchase volumes listed in Part 2.A of the Proof of Claim and Release (which were drawn from King Pharmaceuticals' sales records produced in the litigation),** *or* **(ii) submit the data requested in Part 2.C of this form.**

  

# PART 2:

## A. CLASS MEMBER'S QUALIFYING PURCHASES OF SKELAXIN AND INITIAL ESTIMATE OF *PRO RATA* SHARE OF NET SETTLEMENT FUND

The Settlement Administrator, in conjunction with plaintiffs' economic expert, has calculated each Class Member's qualifying purchases of Skelaxin and, based upon that purchase volume, has provided an initial estimate of each Class Member's *pro rata* share of the Net Settlement Fund, based on the distribution methodology approved by the Court. The distribution calculation is based upon the Skelaxin sales data produced by King Pharmaceuticals, Inc. in this litigation.

Each Class Member should verify the accuracy of the total purchase amounts listed below. **If you agree that the total purchase amounts computed for your company is accurate, you should sign the last page of this form and mail it to Settlement Administrator, Skelaxin Direct Purchaser Antitrust Litigation, c/o Rust Consulting, Inc. P.O. Box 1849, Faribault, MN 55021-3849 postmarked no later than _____.** If you agree to the accuracy of the total purchase amounts listed, you will not be required to produce any purchase data as part of the claims administration process, but you will be waiving the right to challenge or appeal the Settlement Administrator's determination regarding your *pro rata* distribution amount on the basis that the distribution amount would have been different had it been calculated using your own purchase records.

**If you believe the total purchase amounts listed for your company are not accurate, you may submit purchase records, in electronic format as described below in Section 2.C, identifying all of your purchases of Skelaxin directly from King Pharmaceuticals from November 4, 2005 to April 30, 2014.**

### CALCULATED ESTIMATE[1] OF YOUR SKELAXIN PURCHASES:

**The total amount of Skelaxin your company purchased directly from King Pharmaceuticals for the period November 4, 2005 to April 30, 2014 (total net amount purchased after deducting any returns, free samples or other purchase adjustments) has been calculated to be:**

<<Total Units>>

The total amount of Skelaxin purchased should include purchases by all related Class Members, such as parents, subsidiaries, and affiliates. All related Class Members must agree to accept this aggregate figure.

Please check here if you agree to accept this figure. ☐

### INITIAL ESTIMATE OF YOUR *PRO RATA* SHARE OF THE NET SETTLEMENT FUND:

Based upon the calculation set forth above and the anticipated amount of the Net Settlement Fund, the initial calculation of your *pro rata* share of the Net Settlement Fund is:

% <<*pro rata* Share>>

This calculation is subject to change based upon the following factors: (1) the level of participation by Class Members in the Settlement; (2) claimants submitting additional documentation to support their total aggregate purchase volume different from that calculated by the Settlement Administrator; and (3) certain additional claims administration costs and other expenditures that may reduce the Net Settlement Fund available for distribution.

---

[1] Purchases for 2014 were estimated based upon sales data provided for previous years.

**B. ASSIGNMENTS**

If you have at any time assigned any claims relating to any purchases of Skelaxin directly from King Pharmaceuticals during the time period November 4, 2005 through April 30, 2014, do not include in C below the purchases you assigned.

PLEASE CHECK HERE IF YOU ARE FILING THIS CLAIM BASED ON AN ASSIGNMENT ☐

If you are submitting a claim pursuant to an assignment of claims relating to any purchases of Skelaxin directly from King Pharmaceuticals during the time period November 4, 2005 through April 30, 2014 that were assigned to you, please identify with particularity the assignments here. Please also attach documentation of such assignments._____

_____

_____

_____

**IF YOU CHECKED THE BOX STATING THAT YOU ACCEPT THE CALCULATED PURCHASE VOLUMES, SKIP TO PART 3. IF YOU DO NOT ACCEPT THE CALCULATION, INSTRUCTIONS FOR SUBMITTING ACTUAL PURCHASE DOCUMENTATION APPEAR BELOW.**

**C. To the extent that you do not elect to rely upon the purchase volume data supplied by the Settlement Administrator as set forth in Part 2.A. above, please identify all direct purchases of Skelaxin from King Pharmaceuticals during the period November 4, 2005 to April 30, 2014.**

Please provide monthly transactional data from November 4, 2005 to April 30, 2014 regarding purchases of Skelaxin directly from King Pharmaceuticals. Include separate lines for purchases, returns, and free samples. Please provide the data as a table in electronic form (e.g., as a tab-delimited text file, an Excel spreadsheet, or an Access database) in the following format:

**SCHEDULE OF QUALIFYING DIRECT PURCHASES OF SKELAXIN**

| Year-Month[1] | National Drug Code[2] | Supplier | Transaction Type[3] | Purchase Amount (# of Tablets) |
|---|---|---|---|---|
| _____ | _____ | _____ | Invoice purchases | _____ |
| _____ | _____ | _____ | Returns | _____ |

[1] Please use one of the standard year-month formats, such as 199901 or Jan-1999.
[2] Please use standard 11 digit National Drug Code (NDC) in the format NNNNN-NNNN-NN.
[3] Please either use invoice purchases (net of chargebacks) or returns.

**PART 3: SUBMISSION TO JURISDICTION OF THE COURT**

By signing below, you are submitting to the jurisdiction of the United States District Court for the Eastern District of Tennessee with respect to the claim you are making as a Class Member and for purposes of enforcing the release set forth below.

# PART 4: RELEASE

By signing below, you confirm that you acknowledge and accept the Release set forth in paragraphs 10 through 12 of the Settlement Agreement[2], which provides as follows:

**A.** **Releases and Covenants.** Upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in Paragraph 6 of the Settlement Agreement, Plaintiffs and all Class Members, on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as the past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all Class Members (the "Releasors"), hereby release and forever discharge, and covenant not to sue Defendants and their respective past and present parents (including but not limited to Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., and Pfizer Inc.), subsidiaries, and affiliates, as well as the past and present subsidiaries, affiliates, general partners, limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators and representatives of all of the foregoing (the "Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions, prior to the Effective Date, (a) alleged, or which could have been alleged, in the Actions or in any other complaint filed in the MDL, or (b) concerning purchases of metaxalone (branded Skelaxin and/or its generic equivalents) and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common law doctrine relating to antitrust or unfair competition, unjust enrichment, or consumer protection (the "Released Claims").

**B.** **Additional Release.** In addition, upon the Effective Date, each Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming final, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Upon the Effective Date, each Releasor also hereby expressly waives and releases any and all provisions, rights, and/or benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 10 of the Settlement Agreement. Nonetheless, upon the Effective Date each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 10 of the Settlement Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**C.** **Reservation of Claims.** Notwithstanding the releases contained in Paragraphs 10 and 11 of the Settlement Agreement, the Releasors and Defendants expressly agrees that the Settlement Agreement and the releases are not intended to release any claims:

(1) arising in the ordinary course of business between Releasors and the Releasees under:
    (a) Article 2 of the Uniform Commercial Code (pertaining to sales), or
    (b) the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or person injury;

    to the extent that such claims are not based in whole or in part on any conduct challenged in any of the Actions or other complaints in the MDL and do not relate to drug pricing or competition, or

---

[2] A copy of the Settlement Agreement is available on the following website: www.SkelaxinDirectSettlement.com.

(2) currently pled by the putative classes in other complaints in the MDL under unfair competition, consumer protection and unjust enrichment state laws and that are (a) based solely upon indirect purchases of Skelaxin by members of the putative classes, and (b) not currently pled in the Lawsuits.

Plaintiffs, their counsel, and the Settlement Administrator will ensure that each claim form contains a copy of the release set forth in Part 4 A through C hereof, which shall be signed by each member of the Class or its authorized representative as a precondition to receiving any portion of the Settlement Fund.

> By signing below, you are further verifying under penalty of perjury that the information provided in this Proof of Claim and Release is accurate and complete.

### PART 5: VERIFICATION/RELEASE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information provided by the undersigned is true and correct and that this Proof of Claim and Release was

executed this ___ day of_____, 2014 in_____
                                                                                                   (City)

_____.
         (State / Country)

_____        _____
(Sign your name here)                                   (Type/Print your name here)

_____        _____
(Type / Print your company name here)        (Capacity of person signing, e.g., President, Partner

**ACCURATE PROCESSING OF CLAIMS MAY TAKE SIGNIFICANT TIME.**

**<u>THANK YOU IN ADVANCE FOR YOUR PATIENCE.</u>**

## *CHECKLIST*

Before submitting your claim, please make sure that you:

1. Complete the SSN/EIN (Part 1) and sign the Verification/Release (Part 5) sections of the Proof of Claim and Release.

2. If you elect to submit your own Skelaxin purchase data, please do so in the format set forth in Part 2.C of the Proof of Claim and Release and send such data with your Proof of Claim and Release or electronically.

3. Maintain the original documents and electronic files supporting your claim (where applicable).

4. Keep a copy of the completed Proof of Claim and Release for your records.

5. Send your Proof of Claim and Release by Certified Mail (return receipt requested), if you want proof that your claim was received.

6. Submit your Proof of Claim and Release postmarked no later than _____.

\* \* \*

\* \* \*

If you have any questions concerning the plan or the Proof of Claim and Release, or if you change your address, please contact the Settlement Administrator at:

Settlement Administrator
Skelaxin Direct Purchaser Antitrust Litigation
c/o Rust Consulting, Inc.
P.O. Box 1849
Faribault, MN 55021-3849
Toll-Free: 1-866-591-7268