UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: SKELAXIN (METAXALONE) ANTITRUST LITIGATION | MDL No. 2343<br><br>Lead Case No: 2:12-cv-83<br><br>Consolidated Cases. 1:12-cv-181; 1:12-cv-185; and 1:12-cv-163 |
| This Document Relates To:<br>All Direct Purchaser Class Actions | |

# FINAL JUDGMENT APPROVING
# DIRECT PURCHASER CLASS ACTION SETTLEMENT

Direct Purchaser Class Plaintiffs Professional Drug Company, Inc., Meijer, Inc. and Meijer Distribution, Inc., Rochester Drug Co-Operative, Inc., Ahold USA, Inc., and Stephen L. LaFrance Holdings, Inc. and its wholly-owned subsidiary Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors (collectively "Direct Purchaser Class Plaintiffs") executed a Settlement Agreement with Defendants King Pharmaceuticals LLC and Mutual Pharmaceutical Company, Inc. ("Defendants") to fully resolve this direct purchaser class action antitrust case.

On April 30, 2014, this Court granted preliminary approval of the parties' proposed settlement ("Preliminary Approval Order") (Doc. 628). The Preliminary Approval Order authorized Direct Purchaser Class Plaintiffs to disseminate notice of the settlement, the fairness hearing, and related matters to members of the direct purchaser class. Notice was provided to the class in accordance with the Preliminary Approval Order, and the Court held a final fairness hearing on September 9, 2014 to further consider the proposed settlement.

**AND NOW,** this 9th day of September, 2014, having considered Direct Purchaser Class Plaintiffs' Motion for Final Approval of Class Action Settlement, oral argument presented at the

fairness hearing, and the complete record in this matter, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

<ins>The Class</ins>

1. This case has been certified for settlement purposes, on behalf of the following class: all persons or entities in the United States and its territories who purchased Skelaxin directly from King at any time during the period November 4, 2005 through and until April 30, 2014 (the "Class Period"). Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities. As set forth in the Preliminary Approval Order (at ¶ 5), notice of the settlement was provided to class members in full compliance with the requirements of Fed. R. Civ. P. 23 and due process. No class member, other than those direct purchasers that are on file and continuing to prosecute their own individual actions in this MDL in *Rite Aid Corporation et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:13-cv-00005) and *Walgreen Co. et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:12-cv-00203) requested exclusion from the class by the July 30, 2014 deadline.[1]

<ins>Jurisdiction</ins>

2. This Court has jurisdiction over the claims of Direct Purchaser Class Plaintiffs, the class, and Defendants.

---

[1] These entities are:
- Rite Aid Corporation and Rite Aid Hdqtrs Corp. ("Rite Aid") and McKesson Corp. only with respect to goods resold to Rite Aid;
- The Jean Coutu Group (PJC) USA, Inc., Maxi Drug, Inc., d/b/a Brooks Pharmacy and Eckerd Corporation ("Brooks/Eckerd") and McKesson Corp. only with respect to goods resold to Brooks/Eckerd;
- Walgreen Co. ("Walgreen"), Cardinal Health, Inc. only with respect to goods resold to Walgreen, and AmerisourceBergen Corporation only with respect to goods resold to Walgreen;
- The Kroger Co. ("Kroger") and Cardinal Health, Inc. only with respect to goods resold to Kroger;
- Supervalu Inc. ("Supervalu") and McKesson Corp. only with respect to 75% of goods resold to Supervalu;
- Safeway Inc. ("Safeway"), McKesson Corp. only with respect to goods resold to Safeway, and Cardinal Health, Inc. only with respect to goods resold to Safeway; and
- HEB Grocery Company LP ("HEB"), McKesson Corp. only with respect to goods resold to HEB, and Cardinal Health, Inc. only with respect to goods resold to HEB.

Notice

3. The Preliminary Approval Order directed the substance, form, and manner by which Direct Purchaser Class Plaintiffs would provide the class with notice of the proposed settlement with Defendants; the date, time, and location of the fairness hearing; and related matters, such as how class members could object to the settlement or otherwise be heard. The notice program included individual notice to class members and the establishment of a website (www.skelaxindirectsettlement.com), through which notice and other information could be obtained. The notice constituted the most effective and best notice practicable under the circumstances and was due and sufficient notice for all other purposes to all potential class members entitled to receive notice.

4. Class Counsel provided first class mail notice to fifty-seven potential members of the class on or about June 13, 2014. Although nine of the original notices were returned as undeliverable, Class Counsel and the Settlement Administrator performed additional outreach efforts and contacted all remaining members of the class via overnight mail and telephone.

Approval of the Settlement and Plan of Distribution

5. The parties' settlement resulted from a detailed investigation of the facts, extensive discovery, expert analysis and reports, and motion practice. It was reached only after arm's-length negotiations, undertaken in good faith by counsel for the parties.

6. The settlement provides a recovery from Defendants of $73 million in cash.

7. The Court has evaluated the proposed settlement under Rule 23 of the Federal Rules of Civil Procedure, as well as relevant Sixth Circuit jurisprudence, including the factors set forth in *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), finding as follows:

a. *The likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement.* "The fairness of each settlement turns in large part on the strength of the parties' legal dispute."[2] When considering the fairness of a class action settlement, courts assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"[3] This case involved numerous, complex legal issues and Direct Purchaser Class Plaintiffs' success was not certain. The risk of the class ultimately receiving nothing was not insignificant. Had Direct Purchaser Class Plaintiffs been unable to prove even one element of each claim, Defendants would have prevailed and the class would have recovered nothing. "All litigation poses risks of course, but antitrust litigation especially so."[4] These risks must be weighed against the settlement consideration: $73 million in cash, which is plainly valuable to the class members. Weighing the risk and uncertainty of litigation against the settlement benefits tilts the scale toward approval.

b. *The complexity, expense, and likely duration of further litigation.* "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'"[5] "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."[6] This is

---

[2] *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163, at *12 (E.D. Tenn. May 17, 2013).

[3] *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *10 (E.D. Mich. Dec. 13, 2011).

[4] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *14.

[5] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (quoting *Williams*, 720 F.2d at 922).

[6] *Id.*

particularly true for class actions, which are "inherently complex."[7] "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them."[8] In the absence of this settlement, litigation and mediation would have continued for several more years at significant additional expense. This settlement ensures that class members will receive their recoveries without further delay and without incurring further expense.

   c. *The opinions of Class Counsel and class representatives.* In deciding whether a proposed settlement warrants approval, Class Counsel's judgment "that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'"[9] Class Counsel have extensive experience in handling pharmaceutical antitrust and other complex litigation.[10] They negotiated this settlement at arm's-length over a period of months with well-respected and experienced counsel for Defendants. Each class representative also has experience in litigating pharmaceutical antitrust cases and evaluated the strength of the settlement, finding that it was fair and reasonable.

   d. *The amount of discovery engaged in by the parties.* The discovery process was intense and nearly complete at the time of settlement.[11] Ultimately, Defendants

---

[7] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *14 (citing *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)).

[8] *Id.*

[9] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *15-16.; *In re Packaged Ice Antitrust Litig.,* 2011 WL 717519, at *11 (quoting *Sheick v. Auto. Component Carrier LLC*, Case No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010).

[10] *See* Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorney Fees, Reimbursement of Expenses, and Awards for the Named Plaintiffs, filed June 6, 2014, at 32-33 (Doc. No. 722); Declaration of Thomas J. Sobol in support of Motion for Attorney Fees at ¶ 50, filed June 6, 2014 (Doc. No. 722-3) ("Sobol Decl. in Support of Motion for Attorney Fees").

[11] For a lengthy discussion of all of the discovery taken in this case, see Motion for Attorney Fees at 12-16; Sobol Decl. in Support of Motion for Attorney Fees at ¶¶ 10-26.

5
Case 1:12-md-02343-CLC-CHS Document 800 Filed 09/24/14 Page 5 of 12 PageID #: 25963

produced approximately 315,000 documents, containing nearly 4.5 million pages.[12] Direct Purchaser Class Plaintiffs (in coordination with other plaintiff groups) analyzed over half of those documents in a short period of time.[13] Direct Purchaser Class Plaintiffs were involved in an intensive deposition preparation process at the time of settlement and planned to take at least twenty depositions of Defendants' employees in November and December of 2013.[14] Direct Purchaser Class Plaintiffs also responded to Defendants' discovery requests, producing thousands of pages of documents and sitting for multiple depositions on both merits and document production issues. Additionally, Direct Purchaser Class Plaintiffs responded to a detailed set of contention interrogatories served by Defendants. Class Counsel's thorough analysis of the documents produced by Defendants fully informed the decision to enter into the settlement and Class Counsel had sufficient information to allow them to evaluate the fairness of the settlement.[15]

    e. *The reaction of absent class members.* The absent class members also support the settlement. After receiving individual, mailed notice and follow-up calls from Lead Counsel for the Direct Purchaser Class, no member of the class objected to the settlement and no member of the class opted out, with the exception of those direct purchasers who filed their own individual lawsuits and are coordinated in this litigation.[16] "[T]he scarcity of objections-relative to the number of class members overall-indicates

---

[12] Sobol Decl. in Support of Motion for Attorney Fees at ¶ 16.

[13] *Id.*

[14] *Id.* at ¶ 19.

[15] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at 17 ("Counsel's recommendation and that of the class representatives is clearly supported by an incredibly extensive base of data and this gives added weight and deference to the judgment of trial counsel and the class representatives.").

[16] *See* Declaration of Thomas M. Sobol in Support of Final Approval of Class Action Settlement, filed August 21, 2014, at ¶¶ 10-11 (explaining that the only opt-outs were those that Direct Purchaser Class Plaintiffs expected – those that filed their own lawsuits and are engaged in this coordinated litigation on their own behalves).

broad support for the settlement among Class Members."[17]

  f. *The good faith of settlement negotiations.* There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, unless there is evidence to the contrary.[18] Here, settlement came after several years of hard-fought litigation and the negotiations were conducted over a lengthy period of time. Class Counsel have extensive experience in proper management of pharmaceutical antitrust class actions and they negotiated this settlement at arm's length with Defendants' counsel.

  g. *The public interest.* "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[19] The settlement also "ends potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources."[20] "Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors."[21] This litigation, which sought to

---

[17] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS, at *19; *Sheick*, 2010 WL 4136958, at *22; *In re Cardizem*, 218 F.R.D. at 527 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement").

[18] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS, at *20; *Telectronics*, 137 F. Supp. 2d at 1018 (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006); *Sheick*, 2010 WL 4136958, at **19-20.

[19] *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

[20] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *21 (citing *In re Broadwing, Inc., ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006)).

[21] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *23 (citing *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.")). *See also Cardizem*, 218 F.R.D. at 534 ("Society also benefits from the prosecution and settlement of private antitrust litigation.").

hold Defendants accountable for their allegedly anticompetitive scheme, serves the greater good. The resolution of the case through settlement further benefits the public by providing prompt compensation to those directly injured by Defendants' alleged actions.

8. Upon consideration of the above factors and the record in this case, the Settlement Agreement and each of its terms are finally approved as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and the parties are directed to consummate the settlement according to its terms.

9. The plan of distribution, including the proposed claim form, for the Settlement Fund is also fair and reasonable. The Settlement Fund will be distributed to class members based on their purchases of Skelaxin during the Class Period. Each class member that files a claim for will receive its *pro rata* share of the Settlement Fund, ensuring that no class member receives preferential treatment. This plan of distribution is similar to those approved in other antitrust cases.[22]

### Direct Purchaser Class Plaintiffs' Lead Counsel Shall Allocate the Attorney Fee Award Using Standardized Hourly Rates

10. When this Court granted Class Counsel's motion for attorney fees on June 30, 2014, it granted a single aggregate fee award.[23] "Ideally, allocation is a private matter to be handled among class counsel."[24] Lead Counsel has directed this case from its inception and are

---

[22] *See, e.g., In re Packaged Ice,* 2011 WL 6209188, at **65-68; *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, at *29-30 (D.N.J. Nov. 9, 2005) (finding plan to allocate settlement funds in proportion to the overcharge incurred by each class member to be "inherently reasonable"); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979-SEB-JMS, 2009 U.S. Dist. LEXIS 132343, at *17-18 (S.D. Ind. Mar. 31, 2009); *In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-MDL-1317, 2005 U.S. Dist. LEXIS 43082 at *17 (S.D. Fla. Apr. 19, 2005); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013).

[23] Order Granting Class Counsel's Motion for Attorney Fees, Reimbursement of Expenses, and Awards for the Named Plaintiffs, filed June 30, 2014 (Doc. No. 747).

[24] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993)

the attorneys "better able to describe the weight and merit of each [counsel's] contribution."[25] From an efficiency standpoint, leaving the allocation to Lead Counsel makes good sense because it relieves the Court of the "difficult task of assessing counsels' relative contributions."[26] Lead Counsel is hereby authorized to allocate the fee award.

11. Should any disputes arise that cannot be resolved by counsel, this Court retains jurisdiction to resolve them.[27] Any such disputes must be brought to the Court's attention via letter motion within ten (10) calendar days after Lead Counsel makes the fee allocation.

12. In undertaking the allocation, Lead Counsel shall employ the same test applicable in the Sixth Circuit in ensuring the reasonableness of fees. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (factors include "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.").

Final Reimbursement of Expenses

13. In the Motion for Final Approval, Class Counsel provided updated information on the expenses incurred in the prosecution of this case. This Court hereby modifies its previous grant of reimbursement of expenses and approves reimbursement of $89,580.15 in expenses, which expenses were reasonable and necessary to the representation of the Class.

Entry of Final Judgment Binding on the Class and Dismissal of the Case With Prejudice

---

[25] *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at **17-18 (E.D. Pa. June 2, 2004) (citation omitted, alteration in original); *see also In re Copley Pharm., Inc.*, 50 F. Supp. 2d 1141, 1148 (D. Wy. 1999).

[26] *In re Prudential Ins. Co.*, 148 F.3d 283, 329 n.96 (3d Cir. 1998); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) (lead counsel given authority to allocate fees awarded by Court).

[27] *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (Co-Lead Counsel shall allocate fees, but the Court retains jurisdiction to address any disputes).

14. No class member timely and validly requested exclusion from the class, other than those already on file in *Rite Aid Corporation et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:13-cv-00005) and *Walgreen Co. et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:12-cv-00203) and specified in footnote 1. With those exceptions, the rest of the class therefore is, and will forever remain, bound by this Order and Final Judgment.

15. This class action is dismissed with prejudice and in its entirety, on the merits, as to Defendants. This dismissal shall not affect, in any way, Direct Purchaser Class Plaintiffs' or class members' rights to pursue any claims other than those released, as set forth in the Settlement Agreement.

16. Direct Purchaser Class Plaintiffs and all members of the class are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any released claims, as set forth in the Settlement Agreement, against any released party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located.

17. In no event shall Defendants be obligated to pay anything in addition to the $73 million settlement fund created pursuant to the Settlement Agreement, including without limitation, attorney fees, awards to the named class representatives for their efforts on behalf of the class, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of the settlement.

18. This Order and Final Judgment does not settle or compromise any claims by Plaintiffs or the class against persons or entities other than the released parties, as set forth in the Settlement Agreement. All rights against any other person or entity are specifically reserved.

19. The settlement, this Order and Final Judgment, and/or any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any kind, including without limitation of any violation of any statute or law or any liability or wrongdoing by Defendants or an acknowledgement of defenses by Direct Purchaser Class Plaintiffs, or the truth of any of the claims or allegations contained in any pleading in this case or the standing of any party to assert claims against Defendants or defenses against Direct Purchaser Class Plaintiffs, and evidence thereof shall not be discoverable or used directly or indirectly, by any party or any third party, in any way, whether in this class action or in any other action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, tribunal, administrative agency, regulatory body or other similar entity, provided, however, that nothing contained herein shall preclude use of the Settlement Agreement or this Order and Final Judgment in any proceeding to enforce the Settlement Agreement.

20. Without affecting the finality of this Order and Final Judgment, this Court retains exclusive and continuing jurisdiction for two years from the entry of this Order over the settlement and the Settlement Agreement, including the Settlement Fund and the administration, consummation, and interpretation of the settlement and Settlement Agreement.

21. The escrow account established by the parties is hereby approved by the Court. Defendants have deposited $73 million as the settlement fund into that escrow account pursuant to the Settlement Agreement, and that escrow fund, including any accrued interest, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

22. Pursuant to Federal Rule of Civil Procedure 54, the Court finds that there is no

just reason for delay and hereby directs the entry of final judgment of dismissal forthwith as to Defendants.

23. There being no other issues remaining in these case, the Court **DIRECTS** the Clerk of Court to CLOSE the Direct Purchaser Class cases: Nos 2:12-cv-83 (Lead Case); 1:12-cv-181; 1:12-cv-185; and 1:12-cv-163.

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

**ENTERED AS A JUDGMENT**
  **s/ Debra C. Poplin**
  **CLERK OF COURT**